[Crim. No. 273.   In Bank.—March 16, 1897.]

## Ex parte A. M. LAWRENCE and L. L. LEVINGS on Habeas Corpus.

Senate—Investigation of Published Charge of Bribery—Refusal of Witnesses to Disclose Names of Informants—Contempt.—Where the state senate was engaged in an investigation of the conduct of its members under a published charge that some of them whose names were not given had taken bribes for aiding in the passage of a bill, and the news editor and one of the reporters of the paper were called upon to testify in the matter, and refused to answer questions put to them as to the names of those from whom they had received information touching the charge of bribery, and the nature of that information, such questions were relevant and pertinent to the inquisitorial investigation, which it was strictly within the jurisdiction of the senate to prosecute, nor did the question call for a privileged communication, and the senate has power to punish the witnesses for contempt in refusing to answer the questions and to give the names of their informants.

Habeas Corpus in the Supreme Court to test the jurisdiction of the state senate to punish petitioners for contempt.

The facts are stated in the opinion of the court.

*Garrett W. McEnerney,* and *Knight & Heggerty,* for Petitioners.

*Attorney General W. F. Fitzgerald,* and *Assistant Attorney General W. H. Anderson,* for the State Senate.

The Court.—The senate of the state was engaged in an investigation of the conduct of its members under a published charge that some of them, whose names were not given, had taken bribes for aiding in the pas-

sage of a certain bill. The news editor and one of the reporters of the paper which published this charge were called upon to testify in the matter, and refused to answer certain interrogatories propounded to them, upon the ground that the information sought to be elicited was privileged, and that the evidence, if given, would be irrelevant and hearsay. The questions contained a demand that the witnesses should give the names of those from whom they had received information touching the charge of bribery, and the nature of that information. The inquisitorial investigation upon which the senate was engaged was one strictly within its jurisdiction to prosecute. It had the undoubted power to examine into the alleged criminal conduct of some of its members, with a view to their expulsion or other punishment if found guilty. (*Ex parte McCarthy*, 29 Cal. 395.) Under such an investigation, these witnesses, who were shown to have been responsible for the published charge, and who at the same time disclaimed personal knowledge of the facts, were asked to give the names of their informants. It was a natural and logical method for the senate to follow in its endeavor to arrive at the truth. If the witnesses, first answering that they had no personal knowledge of the matter, were to be justified in refusing to give the names of their informants, the senatorial inquiry must necessarily come to an end. Upon the other hand, if they stated the names of their informants and the nature of their information, the senate could summon those persons and so trace the charge to a just conclusion. The evidence, then, was relevant and pertinent. The case differs from those presented in courts where the interests lie between conflicting parties, and where improper evidence sought to be introduced in the interests of one must be to the injury of the other. Here the inquiry was inquisitorial, to arrive at the truth concerning a public charge of corruption, silent as to names, indefinite as to facts, but specific in its assertion of bribery. There were no parties to this proceeding. The senate was investigating the conduct of its own

members, and it was a contempt of its authority for the witnesses to refuse to give the names of those who were responsible for the promulgation of the charge. It cannot be successfully contended, and has not been seriously argued, that the witnesses were justified in refusing to give these names upon the ground that the communications were privileged. (Code Civ. Proc., sec. 1881.)

The writ is discharged and the prisoners remanded to the custody of the sheriff of Sacramento County.