MORROW, District Judge
(orally). It appears from the petition in this case that Andrew M. Lawrence and L. L. Levings, the first the managing editor and the other a reporter of the San Francisco Examiner, are in the custody of the sheriff of Sacramento county, and L. F. Blackburn, sergeant at arms, by virtue of certain resolutions adopted by the senate of the state of California March 10,1897. The resolution in the case of Andrew M. Lawrence is as follows:
“Whereas, heretofore, this senate, by resolution duly passed, appointed Senators John E. Dickinson, Eugene Aram, and J. H. Seawell an investigating committee to investigate the charges of bribery preferred by the San Francisco Examiner against this senate; and whereas, said committee had A. M. Lawrence, of the San Francisco Examiner, before said committee; and whereas, upon the said A. M. Lawrence being duly sworn to answer questions before said committee, and admitting that he was managing editor of said paper; and whereas, upon said examination the said A. M. Lawrence, as a witness, was allowed counsel, at his request, and upon being asked certain questions, as will be seen by the report of said committee made to this senate, and which said questions being material to the inquiry and investigation being carried on and conducted by the committee, he, the said Andrew M. Lawrence, then and there refused and declined to answer the said questions; and whereas, the said committee reported the said action of the said committee, and the questions propounded the said witness, the said A. M. Lawrence, and that he had contumaciously refused to answer the said questions to this senate; and whereas, upon the coming in of the said report of the said committee the senate resolved that the said A. M. Lawrence be subpoenaed before the bar of the senate to show cause why he should not answer the said questions; and whereas, the said witness, A. M. Lawrence, was duly subpoenaed before the senate, and at eleven o’clock a. m. of the 9th day of March, A. D. 1897, appeared before the bar of the' senate; and whereas, the said questions reportéd by the said committee were then and there propounded to him, the said A. M. Lawrence, by the president of the senate, and he, the said A. M. Lawrence, *100 then and there again refused and declined to answer the said questions, having no lawful or legal excuse therefor, and having been duly represented by counsel of his own selection, and having the ability and power to answer the said questions, but contumaciously refusing to answer the same: Now, therefore, be it resolved, that the said A. M. Lawrence be and he is hereby declared to be guilty of contempt of the senate; and be it further resolved, that he, the said A. M. Lawrence, be taken into custody by the sergeant at arms of the senate, and that he be committed to the county jail of the county of Sacramento, state of California, until he shall have purged himself of this contempt by answering the questions which were propounded to him under the direction of the senate; that a copy of this resolution, duly attested by the secretary of the senate, be the authority of the sergeant at arms of the senate and the sheriff of the county of Sacramento.”
The petitioner L. L. Levings is in custody under substantially the same resolution. In the petition it is alleged that the imprisonment of Lawrence and Levings is illegal, in this:
“(a) That no investigation, proceeding, or matter whatever was or is pending before said senate, or the legislature of said state, in said assistance, or in pursuance of which said questions were asked or put by said senate to said Lawrence and Levings, upon or in respect to which any legislative action or proceeding of any character whatever was proposed or intended, or to or in which the said questions were or are or could or would be relevant, competent, or material, (b) That there was not, at the time said questions were asked and put by said senate, any bill, resolution, investigation, or legislative proceeding whatever, under consideration pending or proposed, in or under, as to or in connection with, which the said questions were or are competent, relevant, or material, (c) That said alleged contempt was not committed in the immediate view and presence of the said senate, and that no affidavit of the facts constituting the alleged contempt was ever made to or was before said senate, and no affidavit whatever was ever presented to said senate of the facts constituting said contempt, (d) That said senate, at the time said questions were asked by said senate and in said senate, for refusal to answer which said senate adjudged said Lawrence and Levings guilty of contempt, had no power or jurisdiction to ask or put said questions, or to require an answer to said questions, or to consider or determine any matter then before said senate as to which said questions were asked, and had no power or jurisdiction to adjudge said Lawrence and Levings guilty of contempt, or commit them to the custody or imprisonment of said sergeant at arms or said sheriff, (e) The said senate had no jurisdiction to make the inquiry to which the questions propounded to said Lawrence and Levings were directed, and said questions were not material, relevant, or pertinent to that issue and inquiry then before the said senate, (f) That said senate was not acting, and had no power to act, upon any matter, proceeding, legislation, or investigation concerning which said questions were asked, or were relevant, competent, or material; nor was there any investigation before said senate, the purpose of which was to enable said senate to act, and concerning which said questions were asked, or as to which said questions, or the evidence to be thereby elicited, were relevant, competent, or material, (g) That the investigation concerning and in which said questions were asked and said alleged contempt committed, and said alleged adjudication by said senate made, and the commitment or resolution under which said Lawrence and Levings were and are imprisoned issued, was of matters judicial in their nature, and which were and are exclusively the subject of judicial inquiry of the courts of this state, (h) The questions asked said Lawrence and Levings were not competent, and did not call for any evidence which would be or was competent, but called for evidence which was, is, and would be hearsay, (i) The said alleged commitment or resolution of said senate under authority of which said Lawrence and Levings were taken into custody and imprisoned does not show or allege that the said questions were or are pertinent, competent, legal, or relevant, or proper, in the proceeding before said senate, or in any proceeding, (j) That said alleged adjudication of said senate, and said commitment or resolution *101 of said senate under and by virtue of which said officials took into custody and imprisoned said Lawrence and Levings, do not, nor does either thereof, adjudge or find that said Lawrence or Levings was or is, nor does it adjudge or hold them, guilty of contempt of the senate of the state of California, (k) There is no adjudication that the said Lawrence and Levings are or were guilty of contempt, and no judgment, order, resolution, or commitment that they committed or are guilty of a contempt of said senate. (1) That said imprisonment and commitment are without due process of law, and in violation of the provisions of the constitution of the state of California, and of the constitution of the United States, and of the amendments thereto, and particularly are in violation of the fourth, fifth, and fourteenth amendments to the said constitution of the United States; that said Andrew M. Lawrence and said L. L. Levings are and each of them is a citizen of the United States and of the state of California, and a resident within the judicial Northern district in the state of California, and, being such citizens and residents, they claim, and there is hereby claimed upon their behalf, the protection of this court to secure them against a deprivation of their liberty without due process of law, and against and in spite of the provisions of the constitution of the United States aforesaid, which are violated by their imprisonment aforesaid.”
To this petition a return has been made by the sheriff of Sacramento county, which recites the proceedings before the state senate, referred to in the resolution; the proceedings before the superior court of the county of Sacramento on habeas corpus, wherein the writ was discharged and Lawrence and Levings remanded to the custody of the sheriff; and also proceedings before the supreme court of the state of California on habeas corpus, which also resulted in the discharge of the writ and the remanding of the parties to the custody of the sheriff. Por the purpose of this decision, it will only be necessary to refer to that part of the return which relates to the proceedings in the supreme court of this state. 48 Pac. 124. After setting out in full the order of the supreme court whereby Andrew M. Lawrence and L. L. Levings are brought before that court, the return proceeds as follows:
“That thereupon, and in accordance with said order of said supreme court of the state of California, I released the said petitioners, and each of them, from my custody and control, upon bail in the sum of $1,000 each, duly approved by a judge of the superior court of the county of Sacramento, state of California. That thereafter, to' wit, on the 10th day of March, 1897, and at about the hour of five o’clock p. m. of said day, the said supreme court of the state of California rendered an opinion and made an order, which opinion and order was and is in the words and figures following, to wit:
“ ‘Ex parte Lawrence and Levings, on Habeas Corpus.
“ ‘By the Court: The senate was engaged in an investigation of the conduct of its members, under a published charge that some of them, whose names were not given, had taken bribes for aiding in the passage of a certain bill. The news editor and one of the reporters of the paper which published this charge were called upon to testify in the matter, and refused to answer certain interrogatories propounded to them, upon the ground that the information sought to be elicited was privileged, and that the evidence, if given, would be irrelevant and hearsay. The questions, in brief, contained a demand that the witnesses should give the names of those from whom they had received information touching the charge of bribery, and the substance of that information. The inquisitorial investigation upon which the senate was engaged was one strictly within its jurisdiction to prosecute. It had the undoubted power to examine into the alleged criminal conduct of some of its members, with a view to their expulsion, or other punishment, if found guilty. Ex parte McCarthy, 29 Cal. 395. Under such an investigation these witnesses, who were shown to have been responsible for the public charge, and who at the *102 same time disclaimed personal knowledge of the facts, were asked to give the names of their informants. It was a natural and logical method for the senate to follow in its endeavor to arrive at the truth. If the witnesses, first answering that they had no personal knowledge of the matter, were to be justified in refusing to give the names of their informants, the senatorial inquiry must necessarily come to an end. Upon the other hand, if they stated the names of their informants and the nature of their information, the senate could summon those persons, and so trace the charge to a just conclusion. The evidence, then, was relevant and pertinent, The case differs from those .presented in courts where the interests lie between conflicting parties, and where improper evidence sought to be introduced in the interests of one must be to the injury of the other. Here the inquiry was inquisitorial, to arrive at the truth concerning the charge of corruption, silent as to names, indefinite as to facts, but specific in its assertion of bribery. There were no parties to this proceeding. The senate was investigating the conduct of its own members, and it was a contempt of its authority for the witnesses to refuse to give the names of those who were responsible for the promulgation of the charge. It cannot be successfully contended, and has not been seriously argued, that the witnesses were justified in refusing to give these names upon the ground that the communication was privileged. The writ is discharged, and the prisoners remanded to the custody of the sheriff of Sacramento county.’ ”
From this opinion and order of the supreme court, it appears that the alleged illegal imprisonment of the parties has been considered upon all the grounds alleged in the petition; but it is contended that the detention of the parties is contrary to the provisions of the fourth, fifth, and fourteenth articles of the amendments to the constitution of the United States, and that, therefore, an inquiry into the cause of the detention is peculiarly within the jurisdiction of this court. It must be observed, however, that the inquiry in the supreme court of the state necessarily involved the w'hole question of an illegal detention, and that the contempt proceedings which resulted in the imprisonment were matters peculiarly within the exclusive jurisdiction of the state, and, so far as these proceedings appear by the petition and return, were regular, and the imprisonment was within the power and authority of the state senate to impose. Ex parte McCarthy, 29 Cal. 395; Burnham v. Morrissey, 14 Gray, 226; People v. Keeler, 99 N. Y. 463, 2 N. E. 615. The first and most important question, therefore, to determine is whether this court will further inquire into the detention of the parties, in view of the proceedings that have been taken in the courts of this state. The contention of the petitioners is that they have been deprived of rights guarantied to them under the constitution of the United States and the constitution of the state, but it is as competent for the state court to determine questions of that character as it is for a federal court. The line between state and federal authority, with respect to matters that may be inquired into by the writ of habeas corpus, has been very carefully drawn by the supreme court of the United States. The subject has frequently been under consideration, and has been elaborately considered with respect to all the elements of jurisdiction, and the law with respect thereto clearly established. It only remains for this court to be guided by that law. In Robb v. Connolly, 111 U. S. 624, 637, 4 Sup Ct. 544, 551, the supreme court said:
“Upon tbe state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the *103 constitution of the United States, and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for the judges of the state courts are required to take an oath to support that constitution, and they are bound by it, and the laws of the United States made in pursuance thereof, and all treaties made under their authority, as the supreme law of the land, ‘anything in the 'constitution or laws of any state to the contrary notwithstanding.’ If they fail therein, and withhold or deny rights, privileges, or immunities secured by the constitution and laws of the United States, the party aggrieved may bring the case from the highest court of the state in which the question could be decided to this court, for final and conclusive determination.”
In the case of In re Wood, 140 U. S. 278, 11 Sup. Ct. 738, the court say, at page 287, 140 U. S., and page 741, 11 Sup. Ct.:
“The highest court of the state having thus disposed of the case, and the appellant having failed to obtain from the trial court an order setting aside the conviction and granting a new trial, the present effort was made to secure his release by a writ of habeas corpus issued by the circuit court of the United States. The statute under which the appellant was prosecuted is not repugnant to the constitution of the United States, and the court that tried him, we repeat, was competent to guard and enforce every right secured to him by that instrument, and which might be involved in his trial. The petition for the writ sets forth no ground affecting its jurisdiction either of the offense charged or of the person alleged to have committed it. If the question of the exclusion of citizens of the African race from the lists of grand and petit jurors had been made during the trial in the court of general sessions, and erroneously decided against the appellant, such error in decision would not have made the judgment of conviction void, or his detention under it illegal. Savin, Petitioner, 131 U. S. 267, 279, 9 Sup. Ct. 699; Stevens v. Fuller, 136 U. S. 468, 478, 10 Sup. Ct. 911. Nor would that error, of itself, have authorized the circuit court of the United States, upon writ of habeas corpus, to review the decision, or disturb the custody of the accused by the state authorities. The remedy, in such case, for the accused, was to sue out a writ of error from this court to the highest court of the state having cognizance of the matter, whose judgment, if adverse to him in respect to any right, privilege, or immunity specially claimed under the constitution or laws of the United States, could have been re-examined, and reversed, affirmed, or modified by this court as the law required.”
Another case is Cook v. Hart, 146 U. S. 183, 13 Sup. Ct. 40. The court held:
“That this court [supreme court] will not interfere to relieve persons who have been arrested and taken by violence from the territory of one state to that of another, where they are held under process legally issued from the courts of the latter state; that the question of the applicability of this doctrine to a particular case is as much within the province of a state court, as a question of common law or of the law of nations, as it- is of the courts of the United States.”
In the case of In re Prederich, 149 U. S. 70, 13 Sup. Ct. 793, the question was very thoroughly reviewed by the supreme court, and it was there said (page 75, 149 U. S., and page 795, 13 Sup. Ct.):
“While the writ of habeas corpus is one of the remedies for the enforcement of the right to personal freedom, it will not issue as a matter of course, and it should be cautiously used by the federal courts in reference to state prisoners. Being a civil process, it cannot be converted into a remedy for the correction of mere errors of judgment or of procedure in the court having cognizance of the criminal offense. Under the writ of habeas corpus this court can exercise no appellate jurisdiction over the proceedings of the trial court or courts of the state, nor review their conclusions of law or fact and pronounce them erroneous. The writ of habeas corpus is not a proceeding for the correction of errors.”
*104 To the same effect is the case of New York v. Eno, 155 U. S. 89, 15 Sup. Ct. 30:
“Whether an offense described in an indictment in a state court is an offense against the laws of that state, and punishable thereunder, or whether it is made by federal statutes an offense against the United States, exclusively cognizable by their courts, and whether the same act may be an offense against both national and state governments, punishable in the tribunals of each, without infringing upon the constitutional guaranty against being twice put in jeopardy of limb for the same offense, are questions which a state court of original jurisdiction is competent to decide in the first instance; and (its obligation to render such decision as will give full effect to the supreme law of the land, and protect any right secured by it to the accused, being,the same that rests upon the courts of the United States) the latter, if applied to for a writ of habeas corpus in such case, should decline to issue it, unless it also appears that the case is one of urgency.”
Also, Bergemann v. Backer, 157 U. S. 655, 15 Sup. Ct. 727:
“When a state court has jurisdiction of the offense and the accused, under an indictment found under statutes of the state not void under the constitution of the United States, and proceeds to judgment under such statutes, a circuit court of the United States has no authority to interfere with the execution of the sentence by means of a writ of habeas corpus.”
These cases clearly establish the doctrine that, except, perhaps, under extraordinary circumstances, United States courts will not, by means of the writ of habeas corpus, take jurisdiction over proceedings in state, tribunals, even though it is alleged that a constitutional right is involved, and that, where such a question has been determined by the highest court in the state upon the general allegation of an illegal imprisonment, the proper proceedings for review are by a writ of error to the supreme court of the United States. That being the rule, without going into the merits of this case,—without considering the objections which have been raised to the proceedings taken by the state senate, and so ably argued by counsel,—I think I am authorized, under these decisions, to hold that the writ of habeas corpus should not be granted in this case, and that the petitioners should be allowed to pursue their remedy by the other method pointed out in the cases that I have referred to. The writ of habeas corpus will therefore be discharged, and the petitioners remanded to the custody of the sheriff of Sacramento county.