# CHARLESTON.

SULLIVAN v. HILL, SHERIFF.

Submitted April 19, 1913.    Decided April 23, 1913.

(Opinion October 21, 1913.)

1. STATES—*Legislative Committees—Witnesses.*

A summons for a witness before a joint committee of the two houses of the legislature, ordered by the unanimous action of such joint committee, is not invalid, if signed by the chairman of the committee from either house, pursuant to section 7, chapter 12, Code 1906, though such chairman be also the chairman selected by the joint committee to preside at the sessions of the joint committee. (p. 52).

2. SAME.

If the subject of investigation before such joint committee be within the range of legitimate legislative inquiry and the proposed testimony of the witness called relates to that subject, obedience to its process may be enforced by the committee directing the summons, by attachment, fine or imprisonment, as provided by said section 7, chapter 12, Code 1906. (p. 53).

3. CONSTITUTIONAL LAW—*States—Legislative Committees—Witnesses.*

Said section 7, chapter 12, Code 1906, authorizing either house of

the legislature or a committee thereof to enforce obedience to its process is constitutional and valid. (p. 54).

4. WITNESSES—*Privilege.*

Knowledge or information acquired by a witness, though at the instance, in connection with and under the direction of a prosecuting attorney to use in the trial of indictments against members of the legislature for bribery, is not privileged, and furnishes a witness lawfully summoned no legal ground for refusing to respond to legitimate questions by the committee. (p. 55).

Petition for writ of habeas corpus by Jesse V. Sullivan against Bonner H. Hill, sheriff, etc.

*Writ Refused.*

*S. B. Avis* and *T. C. Townsend,* for petitioner.

*A. A. Lilly,* Attorney General, for respondent.

MILLER, JUDGE:

Petitioner by writ of habeas corpus seeks discharge from the custody of defendant, to whom he was committed by the order of Oliver S. Marshall, chairman of a legislative committee, pursuant to section 7, chapter 12, Code 1906.

At the time of the order of commitment, March 28, 1913, committees of the House and Senate were sitting pursuant to "Senate Joint Resolution No. 22—Raising a joint committee to investigate bribery charges against certain members of the Senate and House of Delegates and persons unknown who are alleged to have offered said bribes," as follows: "Be it resolved by the Senate, the House of Delegates concurring therein:

"That a committee of five, composed of two members of the Senate, to be appointed by the President of the Senate, and three members of the House of Delegates, to be appointed by the Speaker of the House of Delegates, be appointed, which committee is authorized and instructed to proceed, with all reasonable diligence, to make a thorough investigation of all matters and things concerning certain bribery charges against certain members of the Senate and House of Delegates, and other persons unknown at the present time, who are alleged to have offered bribes to the aforesaid members; and to investigate all matters and things concerning charges that certain members

73 W. Va.

aforesaid have been offered and paid certain sums of money for their votes in the Joint Assembly, for the purpose of electing a United States Senator to the Congress of the United States for the term beginning March 4, 1913, which said committee is authorized and empowered to employ assistance, to summon and compel the attendance of witnesses, to administer oaths, and, generally, to send for persons and papers. Said committee shall have all the authority and power conferred on committees by section seven of chapter twelve of the Code. Said committee shall have full power and authority to act after the adjournment of the Senate and House of Delegates, to the end that all the charges may be fully investigated, and to report their findings to a future meeting of the Legislature, if unable to complete said investigation before the expiration of the present session."

Pursuant to the resolution Oliver S. Marshall and O. A. Hood were appointed members of the committee from the Senate, and Vernon E. Johnson, C. A. Sutton, and A. G. Swiger, members thereof from the House.

The petitioner on a summons issued by Chairman Marshall appeared before the joint committee, and being sworn, and after responding to some preliminary questions, he was requested by Chairman Marshall to state to the committee what information or knowledge he had concerning the arrest of or bribery charges against certain members of the Senate and House of Delegates of West Virginia, or other persons. He declined to answer, not on the ground that it would in any way incriminate him, but giving as his only reason, that the information he had on the subject had been obtained at the instance, in connection with and under the direction of the prosecuting attorney of Kanawha County, and that the latter had not waived his privilege so as to permit him to testify. He was then asked by the attorney general, present on behalf of the committee: "You mean you were with him, or near him, at the time you saw or heard anything concerning which you now refuse to testify?" To which the witness replied: "Yes, sir."

The several grounds alleged and relied on by petitioner for his discharge are: (1) That neither the committee nor any

member thereof had any power or authority to order his arrest and detention, restraining him of his liberty: (2) That said committee had no power or authority to require him to give testimony or respond to the questions propounded to him in relation to the matters and things set forth in said joint resolution: (3) That the information sought by the committee was privileged, he being under the confidential ban of the prosecuting attorney as alleged: (4) That neither said committee nor any member thereof had any power or authority to punish him as for a contempt, and that his commitment was illegal and void and that he should be discharged.

The jurisdiction of the committee under the joint resolution is not rested alone in inherent powers of the legislature, or of one of its committees in the premises. Section 7, chapter 12, provides: "When the senate or house of delegates, or a committee of either house, authorized to examine witnesses, or to send for persons and papers, shall order the attendance of any witness, or the production of any paper as evidence, a summons shall be issued accordingly, signed by the presiding officer or clerk of such house, or the chairman of said committee, directed to the sheriff or other proper officer of any county, or to the sergeant-at-arms of such house, or any person deputed by him. And when served, obedience thereto may be enforced, by attachment, fine or imprisonment, at the discretion of the house which appointed the committee; and if the committee be authorized to sit during the recess of the legislature or the recess of the house which appointed the committee, then obedience to the summons may be enforced by said committee as aforesaid. And when a committee is appointed by each house under any joint or concurrent resolution, and directed to sit jointly, with authority to examine witnesses or send for persons and papers, the summons aforesaid may be signed by the chairman of the committee on the part of the senate or the chairman of the committee on the part of the house of delegates; and obedience thereto may be enforced as aforesaid by the house which appointed the committee, which directed the summons to be issued; and if such committees be authorized to sit during the recess of the legislature, then obedience to the summons afore-

said may be enforced as aforesaid by the committee which directed the summons to be issued." According to the return, the summons, order of arrest and commitment were the result of the unanimous action of the joint committee, or of both committees sitting together, but the summons and order of arrest and commitment were signed only by Oliver S. Marshall, chairman, who by general parliamentary practices, being the first named, was chairman of the Senate committee, or the Senate branch of the joint committee.

We think the summons and order of arrest, so directed and executed, were valid exercises by the Senate committee of the power given by the statute to enforce obedience to its summons, for though joint it was also several, and obedience might have been enforced by either committee. So much for the regularity of the proceedings. Our conclusion, therefore, is that if the matter of inquiry was lawful, there was no want of power in the Senate committee, as a means of enforcing obedience to its writ, to arrest and restrain the petitioner as was done, and to punish him by attachment and imprisonment for his disobedience, and that first and fourth points relied on must be overruled.

The second ground, namely, want of authority to require petitioner to respond to the questions propounded to him, presents a different question. If the subject of investigation covered by the joint resolution was within the range of legitimate legislative inquiry, and the questions were pertinent thereto, and not calling for privileged matter, the authorities generally agree, that either house, if authorized, or a committee of either house, though sitting in recess, may summon witnesses, and compel obedience thereto. *People* v. *Keeler,* 99 N. Y. 463, 52 Am. Rep. 49; *Kilbourn* v. *Thompson,* 103 U. S. 168; *In re Chapman,* 166 U. S. 661; *In re Falvey,* 7 Wis. 630; *In re Gunn,* (Kans.) 19 L. R. A. 519; *Ex parte Lawrence,* (Cal.) 48 Pac. 124; *People* v. *Learned,* 5 Hun. 626; *Ex parte Parker,* 74 S. C. 466, 7 Am. & Eng. Anno. Cas., 874, and dissenting opinion in *In re Davis,* 49 Pac. 160, and cases cited and reviewed. In *Kilbourn* v. *Thompson,* discharge was ordered, on the ground that the subject of the inquiry was not within the

range of legitimate legislative investigation. Whether, if otherwise, obedience to its process could be enforced as attempted, was reserved and not decided. In *In re Chapman*, the writ was denied. In that case the resolution directed the committee to inquire "whether any Senator has been, or is, speculating in what are known as sugar stocks during the consideration of the tariff bill now before the Senate." The Court, by Chief Justice Fuller, at page 669, says: "What the Senate might or might not do upon the facts when ascertained, we cannot say, nor are we called upon to inquire whether such ventures might be defensible, as contended in argument, but it is plain that negative answers would have cleared that body of what the Senate regarded as offensive imputations, while affirmative answers might have led to further action on the part of the Senate within its constitutional powers." That the resolution of the Senate did not specify the purpose of the investigation was regarded immaterial, the subject of investigation being clearly within the constitutional powers of the Senate.

In the face of these authorities it is hardly necessary to inquire whether the subject of inquiry directed by the joint resolution was proper matter of legislative probe. That subject at once suggests, expulsion of its members, if found to be bribe takers, and further legislation on the subject of punishing the crime, clearly within the powers of the legislature enumerated in the Constitution.

But it is insisted that though either house may punish a contumacious witness for disobedience to its process, or the process of one of its committees, no such power could by statute or resolution be devolved on one of the committees. The diligence of counsel and the investigation of the court have failed to find any case affirming the proposition, other than *In re Davis,* 49 Pac. 160. Denying it are *People* v. *Learned,* 5 Hun. 626, *Ex parte Parker,* 74 S. C. 466, 7 Am. & Eng. Anno. Cas., 874, and the dissenting opinion in *In re Davis.*

To deny the power of the committee to enforce obedience to its process in the manner provided by the statute, we would have to hold the act unconstitutional. To so hold the act would have to be clearly violative of some constitutional guaran-

tee. There is surely nothing in our constitution expressly pro-
hibiting such delegation of power. The act involved in *People*
v. *Learned, supra,* was held not in conflict with the constitu-
tional provision declaring that no person shall be deprived of
life or liberty or property without due process of law. The con-
clusion we reach, that the act is valid, and the action of the com-
mittee authoritative, though not directly decided, we think sup-
ported by the reasoning and some of the authorities cited in
*Caldwell* v. *Carfer,* 61 W. Va. 49.

Lastly, as to the question of privilege relied on. The privi-
lege invoked is not a personal privilege of the witness, but the
supposed right or privilege of the prosecuting attorney, because
of the circumstances under which witness obtained his in-
formation. Witness asks no personal protection. The prose-
cuting attorney objects that his evidence would disclose the in-
formation to the committee in advance of a trial of the ac-
cused members on indictments found, and that the jurisdiction
of the criminal court is exclusive of any other authority to
try and punish the offending members of the legislature. The
rule respecting state secrets is also appealed to. We do not
think that rule has any application to the case here. While
there are instances in which public officers, on grounds of pub-
lic policy, may not be compelled to disclose information ob-
tained in the course of their employment, such as revenue of-
ficers and the like, no principle of public policy is involved
here as between witness and the state or the state's officer.
There is no public policy of suppressing knowledge or inform-
ation of the guilt or innocence of persons accused of crime, no
matter how obtained, particularly where that knowledge or in-
formation is sought by a legislative committee, in the lawful
pursuit thereof. There may be instances where the mouth of
a prosecutor could be closed by a citizen consulting and giving
him information, for the purpose of getting his advice on the
propriety of some proposed or contemplated criminal proceed-
ing. There the relationship of attorney and client might be
established, and the information become privileged, cutting off
the prosecuting officer from disclosing the information so
acquired. But no such relationship of attorney and client

existed between witness and prosecutor in this case. We think the point is without substantial merit.

For the reasons stated, the writ was properly denied, and the petitioner rightfully remanded to the custody of the defendant.

*Writ Refused.*