IN THE MATTER OF W. WAYNE, WITNESS BE-
FORE THE GRAND JURY.

July 7, 1914.

*Evidence—Confidential communications; privilege of witness—Contempt:* Information given a journalist as the basis of newspaper articles, is not privileged; and his refusal to disclose to a grand jury the source of such information would in a proper case, be contempt of court.

*Investigation by grand jury:* witness' claim of privilege; contempt in refusal to answer questions.

*E. W. Sutton* (*Smith, Warren, Hemenway & Sutton* with him) for respondent.

*J. W. Thompson,* Assistant U. S. Attorney, for the United States.

CLEMONS, J. The grand jury having voted on a matter under consideration, its finding was reported to have become public in advance of its being regularly reported to the court; and on an investigation by that body as to who, if any, of its members had violated his oath of secrecy, W. Wayne, the city editor of a Honolulu daily newspaper, from whom a previous witness had testified to having obtained the information thus prematurely reported, was called and asked the name of his informant. He declined to answer. The foreman of the grand jury reported the facts to the presiding judge, and in open court made a statement thereof in substance as above. The reluctant witness then said, in reply to the court's request for the reason for such refusal:

"The same as would be the reason of any gentleman of the jury against giving his private business secrets publicity. It is our source of news that we rely on to enable us to get out a newspaper; and if we break confidence with

the source of news we would lose all of our sources and would have no newspaper.

"It is a matter of information, was given to me in secrecy,—it is a matter of honor, aside from the newspaper's standpoint."

In the opinion of the court, the position of the witness is untenable. Though there is a canon of journalistic ethics forbidding the disclosure of a newspaper's sources of information,—a canon worthy of respect and undoubtedly well-founded, it is subject to a qualification: It must yield when in conflict with the interests of justice,—the private interests involved must yield to the interests of the public.

This principle has been applied by this court in the case of *United States v. Kekauoha*, 3 U. S. Dist. Ct. Haw. 259, involving communications made by a church member to church officials. In this case it was said by Judge Dole:

"No private or social or religious obligations can dispense with that universal one which lies on every member of society to divulge all information in regard to crimes against the public interests, except as provided by law, in the recognition of certain communications which are privileged, because of the sentiment that to compel testimony under the circumstances would be of more prejudice than value to the public. These privileged communications include those made between attorney and client, husband and wife, physician and patient, clergyman and penitent, and some others." Id. 261.

And it is not within the power of a court to add to the list of communications which are privileged. Even the privilege as to communications between priest and penitent required a statute for its foundation. Id.; 4 Wigmore, Evidence, sec. 2394.

And the principle has been enforced specifically as to communications to newspapers and their representatives. 4 Wigmore, Evidence, 3186, sec. 2286, and note 7, citing, inter alia, the Parnell Commission's Proceedings, and *United States v. Shriver*.

"Such a rule [of privilege] would be in violation of a

sound public policy." Smith's Digest of Precedents of Privilege of Congress (1894), 828, 848, 856, reporting the *Shriver* case, supra.

Thus, in *Ex parte Lawrence,* 116 Cal. 298, 48 Pac. 124, a newspaper reporter was held to be in contempt of legislative authority in refusing to disclose to a state senate committee the names of persons from whom he had received information touching a charge of improper conduct of senators then under investigation. See also *People v. Durrant.* 116 Cal. 179, 48 Pac. 75, 86, in which was dismissed a similar claim of privilege, with the statement that "the claim scarcely merits comment."

"For 300 years it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence. We may start, in examining the various claims of exemption, with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional and are so many derogations from a positive general rule." 4 Wigmore, Evidence, 2965, sec. 2192.

"In general, the mere fact that a communication was made in express confidence, or in the implied confidence of a confidential relation, does not create a privilege. This rule is not questioned to-day. No pledge of privacy, nor oath of secrecy, can avail against demand for the truth in a court of justice. . . . Accordingly, a confidential communication to a clerk, to a trustee, to a commercial agency, to a banker, to a journalist, or to any other person not holding one of the specified relations hereafter considered, is not privileged from disclosure." Id. 3186-3187, sec. 2286.

The decision of the supreme court of Georgia, in the case of *Plunkett v. Hamilton,* 136 Ga. 72, 70 S. E. 781, 35 L. R. A. (N. S.) 583, follows the California case of *Lawrence,* above cited, and also the New York case of *People v. Fancher,* 4 Thomp. & C. 467. The court in the latter case sustained an imprisonment for contempt for refusal to give

the name of the writer of a libel published in a newspaper. In a case in the New Jersey supreme court, of a witness before the grand jury, who had testified that he knew the name of the person who furnished the information upon which he had written a certain newspaper article, but refused to give the name, for reasons similar to those advanced by Mr. Wayne, above, the privilege there claimed was characterized by the appellate court as "a privilege which finds no countenance in the law," a privilege "far-reaching in its effect, and detrimental to the due administration of the law." *In re Grunow*, 85 Atl. 1011, 1012. See 4 Jones, Commentaries on Evidence, 620-621, sec. 771. See, also, 7 A. & E. Enc. L., 2 ed. 47-48, par 3 (a), for a valuable suggestion; and generally as to the court's control over witnesses before the grand jury: *United States v Caton*, 25 Fed. Cas. 350, No. 14,758; 1 Cranch. C. C. 150; *In re Rogers*, 62 Pac. (Cal.) 47; *Heard v. Pierce*, 8 Cush. (Mass.) 339, 342; *In re Taylor*, 28 N. Y. Supp. 500, 501.

The Maryland statute stands alone in making such communications privileged. It is characterized by Mr. Wigmore as an "enactment . . . detestable in substance [which] will probably remain unique." 4 Wigmore, Evidence, 3187, n. 7.

In consideration of the above authorities, contrary to which no authorities have been found, the witness here must answer the proposed question, or stand committed for contempt of court.

NOTE: After the court had made its opinion as above, Mr. Wayne immediately purged himself of any possible contempt by not only giving the desired information but producing his informant as a witness before the grand jury.