[L. A. No. 16753.   In Bank.—May 6, 1939.]

THE SPECIAL ASSEMBLY INTERIM COMMITTEE ON PUBLIC MORALS OF THE CALIFORNIA LEGISLATURE, Appellant, v. HARRY A. SOUTHARD et al., Respondents.

Fred B. Wood, George W. Wakefield, Arthur McHenry and Norris J. Burke for Appellant.

Melvyn I. Cronin, as *Amicus Curiae,* on Behalf of Appellant.

George W. Rochester for Respondents.

THE COURT.—A rehearing was granted in this matter in order that a reexamination of the law applicable thereto might be made in the light of further arguments advanced in the petition for rehearing. Such reexamination has convinced us that to announce a contrary conclusion would be in disregard of established law on the subject in this and other jurisdictions, and that we would not be justified in taking such a course. ■ The power here sought to be exercised by a single house of the legislature has uniformly been denied whenever it has been questioned. ■ The fact that interim committees have been appointed by single house resolutions and have heretofore carried on without objection is beside the point. Their authority is now vigorously attacked in this proceeding. The problem is not one of a restrictive or liberal construction of the law applicable to the powers of the legislature. ■ A single house is not the legislature. The decision herein does not prevent the appointment of interim committees to investigate and report to the next legislature. It is clearly pointed out that they may be

appointed pursuant to a statute duly adopted. Assuming that their appointment be desirable, no good reason has been advanced why they should not be appointed by following that orderly and authorized course. Service of a legislator on such a committee would in nowise be in violation of section 19 of article IV of the Constitution prohibiting members of the legislature from occupying any other ''office, trust or employment''. We feel impelled to adhere to the conclusion heretofore reached and in doing so adopt the former opinion as the opinion of the court on rehearing, as follows:

''This appeal presents for determination the question whether the state assembly by single house resolution during a regular session of the legislature may lawfully create an investigating fact finding committee with power to function after the adjournment of the legislature *sine die.*

''The assembly, at the fifty-second session of the legislature, while the legislature was in session, in May, 1937, passed house resolution No. 171. This resolution recites that in the past the assembly has customarily adopted resolutions creating interim committees to study and investigate problems of public concern; that these committees in the past have developed facts and information valuable to the assembly in proposing legislation; that it appears desirable that such committees be consolidated for better efficiency and for reasons of economy 'so that they may better study upon a broader scope the various problems of governmental concern to the end that these committees may determine upon desirable changes in, or additions to, the statutory laws of the State of California, and to recommend such changes and additions to the fifty-third session of the legislature thereby rendering a valuable legislative service to the people of the State of California'. The resolution then created 10 interim committees, including appellant, the Assembly Interim Committee on Public Morals, and in addition created a special coordinating committee with power generally to supervise the work of the various committees and with power to control the expenditures of such committees. In reference to the committee here involved the resolution provides: 'That there are hereby created certain Assembly committees to function during the interim between the fifty-second and fifty-third sessions of the Legislature . . . to wit: . . .

" ' (8) Assembly Interim Committee on Public Morals, to consist of seven (7) members, which committee is authorized and directed to study and investigate all matters and things pertaining to existing or proposed laws of this State and its political subdivisions, with reference to all matters of public morality, including alcoholic beverages, gambling, vice of all kinds, wrestling and boxing matches, horse racing, dog racing and matters of a similar nature, and the administration of such existing laws.'

"The resolution further provided that 'the sum of twenty-five thousand dollars ($25000) is hereby appropriated and set aside from the contingent fund of the Assembly, for the purpose of paying the expenses of the committees created by this resolution, including costs of any records and transcripts, and an allowance of $8 per day (in lieu of expenses for living accommodations and meals) and 5½ cents per mile each way, incurred in connection with the powers granted and duties imposed by this resolution . . . '. Each of the committees was 'authorized and empowered to summon and subpoena witnesses, require the production of papers, books, accounts, reports, documents, records and papers of every kind and description, to issue subpoenas and to take all necessary means to compel the attendance of witnesses and to procure testimony'. The resolution also authorized the members of such committees to administer oaths, and the pertinent provisions of the Political Code relating to the attendance and examination of witnesses before the legislature and its committees were made applicable to proceedings before each of the newly created committees.

"The fifty-second session of the legislature adjourned *sine die* on May 28, 1937.

"The committee here involved called a meeting of its membership to be held in Los Angeles on February 7, 1938, 'for the purpose of determining whether vice and crime in the State of California, and more particularly in the city and county of Los Angeles was so widespread and notorious as to require additional legislation for its control and suppression'. The committee met at the time and place specified, and thereupon proceeded to administer the oath and question the 11 respondents who had been subpoenaed and who were then in attendance. It is not disputed that all of the proceedings up to this point were regular in all respects, if the committee

itself had lawful existence. To each of the respondent witnesses certain questions dealing with his supposed knowledge or connection with vice conditions in Los Angeles were propounded. The witnesses refused to answer these questions on the ground the committee had no lawful existence. Thereafter, purporting to act under section 302 of the Political Code, the committee caused to be filed in the Los Angeles superior court a petition to compel the giving of testimony. Section 302, *supra*, as amended in 1937, purports to confer on the superior court power to compel the giving of testimony before such committees when the legislature is not in session. The trial court issued to each of the respondents its order to show cause. On the return date each of the recalcitrant witnesses appeared in person and by counsel, but filed no written appearance or pleading. The trial court, after a hearing and argument, held that it had no power to compel respondents to answer the questions for two reasons:

"1. That the committee was not lawfully created, in that the assembly is without power to create a committee by a single house resolution with authority to sit after adjournment *sine die;* and;

"2. That even if lawfully constituted, as to many of the questions, the committee had exceeded its inquisitorial powers.

"The trial court thereupon entered its judgment discharging the order to show cause, denying the petition, and dismissing the cause. From this judgment (and as well from the opinion and minute order of the trial court) the committee has appealed.

"The cause has been exhaustively and ably briefed by both appellant and respondents. As already indicated, the main question presented on this appeal is whether the assembly may lawfully create an investigating committee by single house resolution with power to sit after the legislature has adjourned *sine die*. On behalf of appellant it is urged that the legislature is a continuing body; that incidental and auxiliary to the lawmaking power is the power to appoint committees for the purpose of investigation; that this power is necessarily implied from the express powers conferred on the legislature by the Constitution; that this implied power exists not only during legislative sessions but also during the interim between sessions; that from a practical standpoint this power must exist because during the sessions time is not

available to properly consider the need for changes in the law; that this power has been exercised by the legislature of this state for many years, and that this constitutes a practical construction of the constitutional power of the legislature. Respondents, while conceding that the legislature possesses the implied power to appoint investigating committees to act during the session, contends that no such implied power exists to appoint a committee to act after the session has been adjourned *sine die.*

''The parties concede that there is no provision of the Constitution expressly conferring or denying the challenged power, but both refer to certain provisions which it is contended impliedly support their respective positions. The more important provisions referred to are article III, section 1, which contains the so-called separation of powers provision; article IV, section 1, which provides that 'The legislative power of the state shall be vested in a Senate and Assembly which shall be designated ''The Legislature of the State of California . . . '' '; article IV, section 2, which provides 'The sessions of the Legislature shall be biennial, unless the governor shall, in the interim, convene the Legislature, by proclamation, in extraordinary session. All sessions, other than extraordinary, shall commence at 12 o'clock m., on the first Monday after the first day of January next succeeding the election of its members, and shall continue in session for a period not exceeding thirty days thereafter; whereupon a recess of both houses must be taken for not less than thirty days . . . '; article IV, section 3, provides that the members of the assembly shall be chosen biennially each even numbered year for two year terms; article IV, sections 4 and 5, provide that senators shall be chosen for four-year terms at the same time and places as members of the assembly; that the senate shall consist of 40 members elected from 40 senatorial districts; that the seats of 20 senators shall be vacated each two-year period, so that one-half of the senators shall be elected every two years; article IV, section 15, provides that 'No law shall be passed except by bill . . . any bill may originate in either house'; article IV, section 23, provides that 'The members of the Legislature shall receive for their services the sum of one hundred dollars each for each month of the term for which they are elected, to be paid monthly in the even-numbered years, and to be paid during the regular legis-

lative session in the odd-numbered years at such times as may be provided by law'; article V, section 9, provides that the governor 'may, on extraordinary occasions, convene the Legislature by proclamation, stating the purposes for which he has convened it, and when so convened it shall have no power to legislate on any subjects other than those specified in the proclamation, but may provide for the expenses of the session, and other matters incidental thereto'.

■ "Under these constitutional provisions it is obvious that the major function of the legislature is that of enacting legislation. This power is expressly conferred by the Constitution. This power necessarily presupposes that the members of each house of the legislature must investigate the necessity for legislation. It is impractical that the entire membership should participate in such preliminary investigation. Consequently, it is well settled by practice and decision, that incidental and auxiliary to the express power conferred, the legislature and each house thereof has the inherent and implied power to appoint committees for the purpose of obtaining information concerning proposed legislation, and reporting back their findings to the body appointing them. From a practical standpoint this implied power must exist in order that the legislature may properly discharge its functions. It is equally well settled that such committees with power to sit during a session or during the constitutional recess between sessions, may be appointed by single house or concurrent resolution. (*In re Battelle,* 207 Cal. 227 [277 Pac. 725, 65 A. L. R. 1497] ; *Ex parte Lawrence,* 116 Cal. 298 [48 Pac. 124] ; *Ex parte McCarthy,* 29 Cal. 395 ; *Fergus* v. *Russel,* 270 Ill. 304 [110 N. E. 130, Ann. Cas. 1916B, 1120] ; *Dickinson* v. *Johnson,* 117 Ark. 582 [176 S. W. 116, Ann. Cas. 1916B, 1067, L. R. A. 1915E, 496].) In the Battelle case, *supra,* the investigating committee was appointed by a single house resolution, and the committee was authorized to and did sit during the constitutional recess required under article IV, section 2, *supra.* The power of the senate to create the committee by single house resolution and the power of the committee to sit and to require the attendance of witnesses, the production of books, and to prosecute for contempt was fully vindicated. All of these cases and others that could be cited, however, simply hold that either by single house or concurrent resolution, the legislature may appoint committees

and delegate to them the power of investigation, with the duty of reporting back to the body that appointed them. That is not the problem involved in the instant case. Here the legislature, after the assembly had appointed the appellant committee, adjourned *sine die* in May of 1937. The resolution creating the committee purported to authorize the committee to sit after such adjournment, and to report back, not to the body that had appointed it, but to a new body, the thereafter to be elected assembly of the fifty-third session. The overwhelming weight of authority is to the effect that neither house of a legislature may lawfully appoint a committee by single house resolution with power to sit after adjournment *sine die*, in fact, every state court that has considered this problem has so held. (*Tipton* v. *Parker*, 71 Ark. 193 [74 S. W. 298]; *State* v. *Guilbert*, 75 Ohio St. 1 [78 N. E. 931]; *Ex parte Caldwell*, 61 W. Va. 49 [55 S. E. 910, 11 Ann. Cas. 646, 10 L. R. A. (N. S.) 172]; *Commonwealth* v. *Costello*, 21 Pa. Dist. Rep. 232; *State* v. *Childers*, 90 Okl. 11 [215 Pac. 773]; *Brown* v. *Brancato*, 321 Pa. 54 [184 Atl. 89].) The only case holding to the contrary is *McGrain* v. *Daugherty*, 273 U. S. 135 [47 Sup. Ct. 319, 71 L. Ed. 580, 50 A. L. R. 1], a case hereafter discussed.

''The theory of the above-cited cases holding that a single house resolution cannot lawfully create a legislative investigating committee with power to sit after the legislature adjourns *sine die* seems to us to be unanswerable. Although stated in different ways, it is basically this: Under the various state constitutions, including that of California, the legislature, with the approval of the governor, has the power to legislate—that is the power to make laws; each house of the legislature has the power to initiate legislation; incidental to and implied from this power to legislate, each house has the implied and auxiliary power to appoint committees for the purpose of aiding it in the proper performance of this function; this power to appoint committees exists by implication, only because of the existence of the express power to legislate; consequently, when the power to legislate ceases, then the power to investigate for the purpose of aiding the legislature in exercising this power ceases, or stated another .way, when the main power of legislating dies the incidental or implied power dies with it; that upon adjournment *sine die* the legislative powers of both houses of the legislature cease; that thereafter the members of the legislature have no legisla-

tive powers unless a special session is called which can only be done at the call of the governor, and at which only those matters set forth in the call may be considered; that during a session each house can function separately as to the introduction of bills, but it has no such power after adjournment; that each regular session of the legislature is composed of a different body from its predecessor; that the only lawful purpose of a committee is to investigate the facts and to report back to the body creating it; that the power conferred on a committee is a delegated power, and the legislature cannot lawfully delegate power that it itself does not possess; that neither house has the power to appoint a committee to function when the legislature itself could not act in the premises.

"These principles were succinctly summarized in *Ex parte Caldwell, supra*. After pointing out that upon adjournment the power of each branch of the legislature as far as its power to legislate is concerned ceases, the West Virginia court stated (p. 911) : 'When the powers of one branch are ended, the powers of the other branch are ended. If we give effect after adjournment to the mere resolution of one branch, it is in effect the continued power of that single branch. If the powers of that branch are at an end, the powers of a committee appointed by it are also at an end. The limb cannot exist after the body has perished. The agent or deputy cannot act after his principal is extinct. If the branch cannot act, how can a committee act deriving its life from the branch?'

"In *Tipton* v. *Parker, supra,* the Supreme Court of Arkansas summarized its conclusions as follows (p. 298) : 'The Senate has no power by resolution of its own to extend its session, and neither did it have power by such separate resolution to continue its committee, a mere agency of the body, beyond the term of the body itself which created it. Each house, says Judge Cooley, must also be allowed to proceed in its own way in the collection of such information as may seem important to a proper discharge of its functions; and, whenever it is deemed desirable that witnesses should be examined, the power and the authority to do so is very properly referred to a committee, with any such powers short of final legislative or judicial action as may seem necessary or expedient in the particular case. Such a committee has no authority to sit during a recess of the house which has

appointed it, without its permission to that effect. But the house is at liberty to confer such authority if it sees fit. The recess here referred to by Judge Cooley we think should be construed to mean only the intermission between sittings of the same body at its regular or adjourned session, and not to the interval between the final adjournment of one body and the convening of another at the next regular session. When applied to a legislative body, it means a temporary dismissal, and not an adjournment *sine die.* (Cen. Dic. verbo ''Recess''; Cooley, Con. Lim. 161.) The committee, being the mere agency of the body which appointed it, dies when the body itself dies, unless it is continued by law, and it is not within the power of either house of the General Assembly to separately enact a law or pass a resolution having the force and effect of a law. To do this requires a majority of each house voting in its favor. (Art. V, sec. 23, Const.) The only legitimate office, power, or duty of a committee of the Senate, in the absence of a law prescribing other functions and duties, is to furnish the Senate which appointed it, with information, and to aid it in the discharge of its duties. The Senate alone has no power to appoint a committee to make an investigation after its adjournment, and to make a report to another department of the government, or to another session of the Senate or General Assembly. (Ordronaux on Const. Leg., p. 375.) Each session of the Senate is separate and distinct from every other session, and is generally composed of different members.'

''As already indicated the only case contrary to those above cited is *McGrain* v. *Daugherty, supra.* In that case the United States Supreme Court, without reference to the cases holding to the contrary, held that the United States Senate lawfully by resolution could create a legislative committee with power to sit after the adjournment of Congress. The court held that probably the House of Representatives cannot appoint a committee with power to sit after adjournment because its members, like the California Assembly, are all elected for the period of a single session, but that the senate 'is a continuing body whose members are elected for a term of six years and so divided into classes that the seats of one-third only become vacant at the end of each Congress, two-thirds always continuing into the next Congress . . . '

■ "Whatever may be the rule as to the United States Congress, it is quite clear that in this state the legislature is not a continuing body—each session is composed of a new body, separate from its predecessor, all of the members of the assembly and one-half of the members of the senate being newly elected for each regular session. In *French* v. *Senate,* 146 Cal. 604 [80 Pac. 1031, 2 Ann. Cas. 756, 69 L. R. A. 556], the petitioners sought mandate to compel the state senate to admit them as members. They had been expelled by that body. This court refused to entertain jurisdiction on the ground that (p. 607) : 'The thirty-sixth session of the legislature has adjourned *sine die;* it is a thing past, and cannot be reconvened upon the mandate of the judicial power. (Const., art. III.) The senate could not reinstate the petitioners as members of that session except when lawfully in session. Nor can the body which composed the thirty-sixth session be again called together except in special session and at the behest of the governor. (Const., art. IV, sec. 2; art. V, sec. 9.) The next regular session of the senate will be composed of different persons *and will be a different body* from that now supposed to be before the court.' The same principle was enunciated by the Supreme Court of the United States in *Anderson* v. *Dunn,* 19 U. S. 204, 230 [5 L. Ed. 242], when it stated: ' . . . although the legislative power continues perpetual, the legislative body ceases to exist, on the moment of its adjournment or periodical dissolution'.

"Appellant refers to several cases holding that by concurrent resolution the legislature may lawfully create a committee with power to sit after adjournment. (*Sullivan* v. *Hill,* 73 W. Va. 49 [79 S. E. 670, Ann. Cas. 1916B, 1115]; *People* v. *Backer,* 113 Misc. 400 [185 N. Y. Supp. 459]; *People* v. *Hofstader,* 258 N. Y. 425 [180 N. E. 106, 79 A. L. R. 1208]; *Terrell* v. *King,* 118 Tex. 237 [14 S. W. (2d) 786].) On this subject there is a conflict in the authorities. Several well-reasoned cases hold that the legislature by joint resolution cannot create a committee with power to sit after adjournment—that such committee can only be created by statute. (*Dickinson* v. *Johnson,* 117 Ark. 582 [176 S. W. 116, Ann. Cas. 1916B, 1067, L. R. A. 1915E, 496]; *Fergus* v. *Russel,* 270 Ill. 304 [110 N. E. 130, Ann. Cas. 1916B, 1120]; *Ex parte Hague,* 105 N. J. Eq. 134 [147 Atl. 220]; aff. on other grounds, 9 N. J. Misc. 89 [150 Atl. 322].) Several

of these cases last cited discuss the cases holding to the contrary and point out that in several of the jurisdictions approving the power to create such committees by joint resolutions there is no distinction between joint resolutions and statutes, both requiring the signature of the governor. The validity of concurrent resolutions in this respect in this state is more directly involved in the companion case of *Swing* v. *Riley*, S. F. No. 16035, this day decided· (*post*, p. 513 [90 Pac. (2d) 313]), and is fully discussed therein. For the purposes of the present opinion, suffice it to say that the concurrent resolution cases are not authority for the validity of a single house resolution and even if they were, it is our opinion that the last cited cases holding concurrent resolutions invalid, state the proper and correct rule.

"Appellant also relies on *Phillips* v. *Riley*, 6 Cal. (2d) 414 [57 Pac. (2d) 1308], recently decided by this court as sustaining its position. This case did involve an interim committee, and did hold that such a committee could lawfully incur certain expenses. The opinion states that the committee was created by concurrent resolution, appellant contending that this is an error, the true fact being that the committee was created by a single house resolution. Whatever the true fact may be in this regard, that case cannot be considered as an authority in the present controversy, for the reason that both parties to that appeal conceded that the committee was validly created. The opinion is very short. At page 415 it is stated: 'The due appointment of the committee by joint action of both houses of the legislature is not challenged, nor is it charged that the committee has not full power and sufficient authority to carry out the letter and spirit of the resolutions creating it.' The point involved in the present controversy was not only not passed upon but was conceded by the parties. We find nothing helpful in *In re Connolly*, 16 Cal. App. (2d) 709 [61 Pac. (2d) 490], also cited by appellant, the point here under discussion not being involved or discussed.

■ "Appellant's last argument is that the legislature for many years past has created interim committees by single house or concurrent resolution, and that such legislative usage, never before challenged, is entitled to the greatest weight in determining the validity of the appellant committee. The obvious answer to this contention is that usage and custom,

no matter how long continued, cannot create a right in the legislature that otherwise it does not possess, and, which, as already held, is impliedly denied to it. As was said in *Fergus* v. *Russel, supra,* in answering an identical contention (p. 146): 'We are not unmindful of the fact that for many years it has been the practice of the Legislature of this state, and of each house thereof, to thus appoint, by joint, or separate resolutions, committees to act after the session of the Legislature had ended, but we have never been called upon to determine the validity of such action. The long indulgence in this custom cannot create a right in the legislature, or either house thereof, to do that which it has no power or authority to do.'

"In view of our conclusion that appellant committee had no legal authority to sit after adjournment of the legislature *sine die,* no necessity exists for passing on the other question raised, *viz.,* the propriety of the specific questions asked of respondents."

For the foregoing reasons the judgment appealed from is affirmed.

LANGDON, J., Dissenting.—I dissent.

Article IV, section 1 of our state Constitution declares that "The legislative power of this state shall be vested in a Senate and Assembly which shall be designated 'The Legislature of the State of California' ".

Section 2 of the same article provides that "The sessions of the legislature shall be biennial, unless the governor shall, in the interim, convene the legislature, by proclamation, in extraordinary session. . . . "

Sections 3 and 4 provide that the "term" of office of members of the Assembly and of the Senate shall be two years and four years, respectively.

Section 23 declares that members of the legislature "shall receive for their services the sum of one hundred dollars each for each month of the term for which they are elected . . . ".

None of the foregoing sections, in my opinion, expressly declares or impliedly infers that either house of the legislature is not a "continuing body". In fact, said sections appear to suggest a contrary conclusion and for the following reasons: (1) The length of the session is not prescribed or limited—if necessary, it could extend until the date fixed for

the next biennial session which would coincide with the term of the members of the assembly and the remainder of the term of one-half of the senate. (2) The members of both houses are paid for their full "term" and not on a *per diem* or session basis. (3) After adjournment *sine die,* and at any time prior to the next ensuing biennial session, they may be convened at the call of the governor and may "legislate" upon matters included in such call; that is to say the *power* to legislate is ever present and continues to exist even after adjournment *sine die.*

In the early case of *Ex parte McCarthy,* 29 Cal. 395, this court had occasion to declare that "A legislative assembly, when established, becomes vested with all the powers and privileges which are necessary and incidental to a free and unobstructed exercise of its appropriate functions. These powers and privileges are derived not from the Constitution; on the contrary, they arise from the very creation of a legislative body, and are founded upon the principle of self-preservation. The Constitution is not a grant, but a restriction upon the power of the legislature, and hence an express enumeration of legislative powers and privileges in the Constitution cannot be considered as the exclusion of others not named unless accompanied by negative terms. A legislative assembly has, therefore, all the powers and privileges which are necessary to enable it to exercise in all respects, in a free, intelligent, and impartial manner, its appropriate functions, except so far as it may be restrained by the express provisions of the Constitution, or by some express law made unto itself, regulating and limiting the same. (Cush. Law and Practice of Legislative Assemblies, p. 221.)

"That powers and privileges, therefore, a legislative assembly takes by force and effect of its creation are to be ascertained by a reference to the common parliamentary law. These powers and privileges are classified by Cushing (p. 246) as follows: . . .

"12. *To investigate, by the testimony of witnesses or otherwise, any subject or matter, in reference to which it has power to act; . . .*"

It goes without saying that a legislature cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change. Certainly if a legislature needs information con-

cerning a problem simple enough to be canvassed quickly, it probably stands in greater need of accurate insight into a problem of greater complexity. Is it not strange to imply a power to investigate without also implying a power to investigate thoroughly? The public interest in the competent discharge of legislative functions should be strong enough to overwhelm technical objections.

The case just above cited, and others that might be mentioned, recognize, and all parties to this litigation concede, that investigation is an indispensable and important incident, and an inherent auxiliary to the proper exercise of the legislative power and that such incidental and auxiliary function may be exercised by either house by single house resolution empowering a committee to sit during the constitutional recess. Inasmuch as the *power* to legislate continues and exists after adjournment *sine die,* just as fully and completely as during the constitutional recess, and inasmuch as either house may concededly by single house resolution lawfully create a committee to investigate during the period of such constitutional recess, when technically it is no more engaged in legislating than it is following an adjournment *sine die,* there would appear to be no substantial reason for denying to either house the right by single resolution to create interim committees for the purpose of carrying on proper legislative investigations. In other words, if the express *power* to legislate continues and exists (though it be dormant) in the interim between sessions of the adjourned legislative body, it seems reasonable to conclude that the incidental and auxiliary investigatory function likewise continues and may be employed during such period, thus insuring a more effective exercise of the principal legislative function. If this be so, a single house resolution is sufficient to create a lawful interim committee, for under section 9 of article IV, *supra,* "each house shall determine the rule of its proceeding"—which latter provision would appear to delegate to each house the choice of methods for the most advantageous use of its functions in the exercise of the state's legislative power.

The question here involved is a novel one in this state, and being peculiar to our constitutional set-up, I have treated the same solely in the light of our constitutional provisions and without regard to the weight of authority elsewhere apparently to the contrary. The decisions of other jurisdictions

are considered at length in the majority opinion. They may be correct under the constitutional provisions there prevailing but even if decided under provisions analogous to our system of government, they need not prove determinative here. In the absence of express constitutional prohibition, I am of the opinion that interim committees of the legislature may be lawfully created by single house resolution.

SEAWELL, J., Concurring in Dissent.—I concur in the dissent.

The law as announced in the earlier decisions of other jurisdictions, in the absence of constitutional restrictions, is founded on a policy which appeared to be most expedient for the promotion of public welfare as conditions existed in those jurisdictions at the time said decisions were written. The development of the agricultural, industrial and commercial life of this state has been so vast and varied that, in the opinion of the legislature, it has become necessary to adopt expedient methods for the investigation and study of questions which have never before confronted the legislative body. Proper study and investigation of momentous subjects cannot be given to important matters which affect the welfare of the state and which are being pressed for solution without the adoption of the interim system. There being in our Constitution no inhibition against the continuance of the system which has existed during past years, I am of the view that we should not adopt the law as written in the decisions of other jurisdictions at distant periods of time, under wholly different conditions, and with no thought of the complex problems which are hourly calling for study and investigation by the ablest in statesmanship and the science of government. Being free so far as constitutional restraints are concerned, the legislature should be free to adopt its own policy in the transaction of its business.