# CHARLESTON

## EX PARTE CALDWELL.

Submitted November 20, 1906.    Decided December 4, 1906.

1. STATES—*Powers of House of Delegates.*
    The House of Delegates has no power, by its independent action, to raise a committee of investigation, with power to sit during the recess of the Legislature after the close of the session of the Legislature. (p. 49.)

Error to Circuit Court, Wood County.

Application by Charles T. Caldwell for writ of *habeas corpus* to W. H. Carfer, sheriff and others.    From a judgment dismissing the writ, plaintiff brings error.

*Reversed, and Discharge Ordered.*

CHARLES T. CALDWELL, for plaintiff in error.

CHILTON, MACCORKLE & CHILTON, for defendants in error.

BRANNON, JUDGE:

Charles T. Caldwell presented to the Judge of the circuit court of Wood county his petition for a writ of *habeas corpus* stating and showing that he had been arrested by the sheriff of Wood county under a certain writ of attachment signed by James Seaman, chairman of a committee appointed by the House of Delegates, commanding the sheriff to attach the body of said Caldwell and have him before said committee to answer for contempt in failing to appear as a witness before said committee.    The House of Delegates, on the 24th day of February, 1905, adopted a resolution reciting that Governor Albert B. White, in a written communication to the House of Delegates, had requested it to make an investigation of certain charges made against him, and authorizing the Speaker to appoint a committee of three members of the House to investigate the charges and empowering the committee to compel the attendance of witnesses and send for persons and papers, and to sit after the adjournment of the session of the Legislature.    The committee, sitting after the adjournment of the Legislature, summoned Caldwell to appear before it as a witness upon the subject matter of investi-

4

gation by the committee, and he had refused to do so, and the committee awarded a writ of attachment directed to the sheriff of Wood county to attach and bring Caldwell before it to answer for contempt in failing and refusing to appear. The Judge of the circuit court awarded the writ of *habeas corpus*, and the sheriff filed a return setting up the said resolution of the House of Delegates, the action of the committee under it, the disobedience of Caldwell under its summons, and said order of attachment, as cause of the arrest and detention of Caldwell. Caldwell moved to quash and demurred to the sheriff's return. The circuit court of Wood county overruled the demurrer and motion to quash and a motion to discharge the prisoner, and remanded Caldwell to the custody of the sheriff and dismissed his writ of *habeas corpus*. Caldwell contests the validity of the writ of attachment on the ground of total want of power in the committee.

The sole cause of Caldwell's arrest was his failure to appear before the committee as a witness. This presents a crucial question. Has the House of Delegates power, by its separate resolution, to raise a committee for such investigation to sit after the adjournment of the regular session of the Legislature? Section 1 of Art. 6 of the Constitution, says that, "The Legislative power shall be vested in a Senate and House of Delegates." Both branches constitute that body called The Legislature. The Legislature is directed by the Constitution to meet on a fixed day every two years, and the whole frame, spirit and provisions of the Constitution contemplate that acts of legislation shall be done by the two houses sitting at the same time. The two houses sit at the same time, neither having the power to adjourn over three days without the other. They meet in a session limited to 45 days, and when that limit comes it operates the dissolution of both houses, neither branch having any power to go on separately thereafter, nor has either body power to meet again alone. The Constitution contemplates that the power of the Legislature shall be exercised by the concurrence of the two houses. To make Legislative action operative in the future, whether by act or resolution, there must be the consent of the two houses. If the enactment is of such a character as to require an act, as distinguished from a resolution, then an act passed by both houses must be made; if the en-

actment or order is of such nature as it may be effected by resolution, it must be made by the joint action of both branches to operate after adjournment. When the powers of one branch are ended the powers of the other branch are ended. If we give effect after adjournment to the mere resolution of one branch, it is in effect the continued power of that single branch. If the powers of that branch are at an end, the powers of a committee appointed by it are also at an end. The limb cannot exist after the body has perished. The agent or deputy cannot act after his principal is extinct. If the branch cannot act, how can a committee act deriving its life from the branch? There can be no question but that during the session one branch can appoint a committee alone to act during the session, because each body has power of action during the session to entertain bills, and may use a committee to investigate and report upon any matter which may come before it. Each branch can agree to or disagree in the action of the other branch. During the session it may have a committee to investigate and report to it. This is necessary to enable it to perform its part in the legislative function committed to both houses. The Congress of the United States is composed of a Senate and House of Representatives, and in those two branches the Federal Constitution vests all legislative powers granted by it, as our Constitution vests in the Legislature the legislative power of the State. There is no doubt of the power of either branch of Congress or Legislature to appoint a committee of investigation, without the concurrence of the other branch, to act during the session. *In re Chapman*, 166 U. S. 661; *Anderson* v. *Dunn*, 6 Wheaton 204; *Ex parte Dalton*, 44 Ohio St. 142. And there is no doubt that both branches of the Legislature can pass a joint resolution operative in future, after adjournment, to glean information for legislation, if a resolution is proper, just as they can pass an act. The passage of such a resolution, in a proper case, is no less a performance of a legislative function than the passage of an act, and it requires the dual consent. An act of one body, operative during recess, as for a statute, would be null, and so would a resolution. It cannot be doubted that by joint resolution a committee may be authorized to sit after adjournment. It may be asked, how does it come that both

branches can pass a resolution to operate and be carried into effect after adjournment, while one branch is denied that power? There are two answers. One is, that both houses can pass an act to operate after adjournment, and both houses can pass a resolution to operate after adjournment, because they have the concurrent action of both branches, whereas the act or resolution of one house has not, and the Constitution plainly contemplates that no act or ordinance having legal force after adjournment shall be passed by one branch. The other answer is, That the Legislature may meet again after adjournment, whereas one house cannot alone meet. When the Legislature once adjourns neither house can meet again alone. We are cited to the case of *Commercial Bank* v. *Worth*, 117 N. C. 146, 23 S. E. 160, 30 L. R. A. 261, for the position that either house may appoint a committee to sit after adjournment. It does not so hold. It holds that a committee appointed by both branches cannot sit in vacation, unless authorized to sit after adjournment, but if so authorized, it may do so; but that refers to a resolution adopted by both branches and does not assert the power of one branch to pass a resolution appointing a committee to sit after adjournment, even if the resolution so authorized. We are also cited to the case of *Branham* v. *Lange*, 16 Ind. 499. That did not involve the power of one branch of the Legislature to appoint a committee to sit after adjournment. It holds that the Legislature has power to authorize a committee to sit in vacation, but does not say that one branch may do so. The act involved is one of both branches, not, as in this case, the action of one branch alone. The court construed the act as empowering the committee to sit after adjournment. Cooley's Constitutional Limitations, page 193, is referred to, saying that, "Such a committee has no authority to sit during a recess of the House which has appointed it, without its permission to that effect; but the House is at liberty to confer such authority if it see fit." Cooley cites the Indiana case and some cases not in the library. The Indiana case does not support Cooley's text.

Another consideration bearing against the power of one branch to raise this vacation committee is this: The Constitution does in terms confide to each branch separately cer-

tain powers, as, for instance, to punish or expel its own members, to provide for its own safety and against disturbance of the transaction of its work, obstruction of the proceedings of itself or officers, or assault, threat or abuse of its members, preferring impeachments, trying them, and confirming gubernational nominations. Now, the fact that the Constitution carefully specifies numerous separate powers for each branch, and gives to both together all legislative power, is strong to show that other separate powers do not exist, on the rule that where certain things are expressed others are denied. We should say so particularly as to a constitution organizing the state government. It cannot be said that each house, as an inherent or implied power, has right to appoint this committee to glean information essential to legislation. This pertains to legislation, which must come from both houses. *Kilbourn* v. *Thompson*, 103 U. S. 168, largely limits inherent powers in Congress, giving only those absolutely essential for granted powers, and denied power in a committee of one branch to investigate private affairs, as being foreign to the function of the House. True, that was under the Federal Constitution, which is one of limitations, whereas the State Legislature may legislate where not prohibited; but the principle of that case tends to show that as all power is by the Constitution vested in two bodies, and separate powers are sedulously specified, we must not violate the plan of the Constitution, though a state Constitution, by claim of inherent power. Why is there in the House of Delegates any silent power absolutely essential to the transaction of its business, to justify this committee? Any legislation suggested by its research must come from both Senate and House,

The main reliance of the committee is section 7, chapter 12, Code of 1899. "When the senate or house of delegates, or a committee of either house, authorized to examine witnesses, or to send for persons and papers, shall order the attendance of any witness, or the production of any paper as evidence, a summons shall be issued accordingly, signed by the presiding officer or clerk of such house, or the chairman of said committee, directed to the sheriff or other proper officer of any county, or to the sergeant-at-arms of such house, or any person deputed by him. And when served,

obedience thereto may be enforced, by attachment, fine or imprisonment, at the discretion of the house which appointed the committee; and if the committee be authorized to sit during the recess of the legislature or the recess of the house which appointed the committee, then obedience to the summons may be enforced by said committee as aforesaid. And when a committee is appointed by each house under any joint or concurrent resolution, and directed to sit jointly, with authority to examine witnesses or send for persons and papers, the summons aforesaid may be signed by the chairman of the committee on the part of the senate or the chairman of the committee on the part of the house of delegates; and obedience thereto may be enforced as aforesaid by the house which appointed the committee, which directed the summons to be issued; and if such committees be authorized to sit during the recess of the legislature, then obedience to the summons aforesaid may be enforced as aforesaid by the committee which directed the summons to be issued." The last part in terms applies to joint and concurrent resolutions, and need not be considered. The first part we construe to apply where the committee is to act during the session, in which case there is no question of its power to sit in a temporary recess during the session; or if it is to sit during the recess after final adjournment, it must have authoriity from both houses to do so. It is true the language contemplates action of a committee appointed by one house "authorized during the recess of the Legislature;" but notice that the power to sit during the recess must be "authorized"—which means that the authority to so sit must be conferred by both houses. If we do not give it this construction, I do not see how provisions touching committees of one house could be harmonized with the Constitution, section 1, Art. 6, which, as above stated, vests the entire legislative power of the state in the *two* branches of the Legislature. We must give the section such a construction as will harmonize it with the Constitution, if possible.

But there is another reason why that statute cannot be relied on to legalize this committee's action. Does it originate, create, vest power in one house to raise a committee to sit after adjournment? Is that the office of the statute? We think not. Its office is to provide how the

attendance of witnesses shall be secured where the
the power to issue process exists in the committee, not to
confer power to sit. It is the office of the Constitution,
not the statute, to confer legislative power. If this is the
true construction, and we think it is, it does not enact power
in one branch to raise a committee to sit after adjournment,
and no question of the constitutionality of the section
comes up.

We, therefore, hold that the resolution of the House of
Delegates conferred no power upon the committee to sit
during the recess, and is void and cannot support the writ of
attachment.

Since the opinion was prepared to this point, we have been
furnished with an opinion delivered October, 1906, by the
Ohio Supreme Court in *State ex rel* v. *Guilbert.* The Ohio
Senate passed a resolution raising a committeee to investi-
gate charges of corruption in the government of the
city of Cincinnati. The Legislature passed an act ap-
propriating money for "contingent fund of the Senate for
the use of the select investigating committee." The
committee acted and incurred certain expenses, for pay-
ment of which its chairman issued voucher, and the
Realty Company, in favor of which the voucher was
for rent of room and light for sessions of the committee, de-
manded of the State Auditor a warrant for it, and the Audi-
tor refused to issue a warrant, and application was made to
the Supreme Court for a *mandamus* to compel him to do so.
The court refused the writ. It held that the Senate had no
power to raise a committee by its sole action, as the whole
legislative power of the state was vested by the Constitution
in the two branches of the Legislature as a unit, and not in
the Senate or House acting separately, and one branch has
no power so acting of independent legislation, except as ex-
pressly granted by the Constitution, or necessarily implied
in the express grants. The court relied on that clause of
the Constitution, like our section 1, Article 6, vesting the
legislative power in a Senate and House of Delegates. When
it was argued that the act appropriating money for contingent
fund of the Senate for the use of "select investigating com-
mittee," ratified the committee, the court said that this com-
mittee was not specifically named in the appropriation, and

the act referred to committees constitutionally appointed; and furthermore, if the act could be held to apply to that committee, it would be void, as the legislative power was delegated to the Legislature, and the Legislature "can not redelegate it to another body." It said, "If a single branch has no constitutional power to appoint this committee, it must be obvious that the whole legislature cannot authorize it to do so." It was suggested that "an act to authorize committees of the general assembly to compel the attendance of witnesses and other purposes" authorized the committee in question. The court said the act was not to be held to so authorize the Legislature or one branch, but its object was to provide means of enabling lawful committees to act; but if it could be so construed, to authorize a single branch to do so, it would be unconstutional. It conceded power to either house to appoint committees as to matters over which each house had express authority in the Constitution. When the power to raise the committee was rested on inherent power in each house to glean information, the court denied such power.

Our conclusion is to reverse the judgment dismissing the writ of *habeas corpus*, and discharge Caldwell from custody.

*Reversed, and Discharge Ordered.*