STATE OF NORTH DAKOTA, on the relation of C. C. Wattam, et al., Appellants, v. D. C. POINDEXTER, State Auditor, Respondent.

(183 N. W. 852.)

**Statutes — legislative enactment concerning employees of each house and its expenses held paramount to independent action of each house.**

   1. A legislative enactment, expressing the legislative power of the Legislative Assembly, pursuant to express constitutional provision, con-

cerning the employees of each house and its expenses, is paramount to the independent action of each house, without the concurrence of the other.

**States — legislative appropriation must exist to warrant disbursement by State Auditor in payment of expenses of each house of the Legislature.**

2. Pursuant to constitutional requirements, there must exist a legislative appropriation to warrant disbursement by the State Auditor in payment of the expenses of each house.

**States — legislative enactment may prescribe circumstances under which legislative appropriation may be disbursed.**

3. A legislative enactment may prescribe the circumstances under which a legislative appropriation may be disbursed.

**Statutes — no legislative appropriation or authority for issuance of warrants to employees of investigating committee when expenses authorized by House alone.**

4. In an action to compel the State Auditor to issue warrants to employees of a special House investigating committee, whose appointment and whose expenses have been authorized by the independent action of the House alone, it is *held*, under the provisions of § 42, Comp. Laws 1913, and Chap. 5, Laws Sp. Sess. 1919, that there exists neither legislative appropriation nor legislative authority for the issuance of warrants to such employees.

Opinion filed June 3, 1921.   Rehearing denied July 6, 1921.

Action of mandamus in District Court, *Nuessle, J.*

From an order sustaining a motion to quash the petition, the petitioners have appealed.

Affirmed.

*Cameron & Wattam,* for appellant.

"There is no doubt in the power of either branch of Congress or legislature to appoint a committee of investigation without concurrence of the other branch, to act during the session."   Re Chapman, 166 U. S. 661 ; 41 L. Ed. 1154; Anderson v. Dunn, 6 Wheat. 204; Ex Parte Dalton, 44 Ohio State, 142.

This Court has said: "The contemporaneous construction placed thereon (referring to a statute under consideration) by the various administrative officers and boards is entitled to great weight and the ac-

quiescence in and approval of such construction by subsequent legislative assemblies and chief executives ought to dispel all possible doubt as to the legislative intent." State ex rel Linde v. Packard, 35 N. D. 315; 36 Cyc. 1140, 1142.

*Wm. Lemke,* Attorney General, and *George K. Foster,* Assistant Attorney General, for respondent.

"Until such a law is enacted, there is no authority to employ such clerks or pay for their service." State v. Wallichs, 14 Neb. 439, 16 N. W. 481; Syllabus in State v. Wallichs, Supra; Syllabus in Cook v. Auditor General, 129 Mich. 48, 87 Neb. 1037.

"It is a fundamental principal of law that: 'The compensation of state officers, and employees, including the amount, and the time and mode of payment, is ordinarily provided for and prescribed by law, and a public officer or agent is not entitled to compensation for his services unless so provided.' " 36 Cyc. 863.

## STATEMENT

BRONSON, J. The relators seek to compel the State Auditor to issue certain warrants. They have appealed from an order sustaining a demurrer to the petition for mandamus.

This petition alleges, in part, that on January 29, 1921, the House of Representatives adopted a resolution for the appointment of a special House committee to consider an audit of the state bank and state industries and to secure such information and data as was desirable; it empowered the committee to procure such legal assistance, such accounting experts, and such other expert and other aid and assistance as the committee should deem necessary and advisable, and granted further, to such committee, the power to summon witnesses and take testimony; that, pursuant to such resolution, a committee of nine members was appointed by the Speaker; that it thereafter organized and employed the relator Wattam as its reporter, and the other relators as stenographers, to aid and assist in the investigation; that such relators qualified, took the same oath of office as provided for legislative employees, and performed the work assigned to them by the committee; that, on March 4, 1921, this committee returned to the House its report, including a transcript of the testimony taken, the minutes of the meetings had, and a certified statement showing the persons employed and their compensation

as allowed, together with individual itemized vouchers for such persons
and expenses incurred; that then the House by resolution in all things
accepted and approved the report and discharged the committee; that,
pursuant thereto, the Speaker and chief clerk of the House examined and
certified the statement of the employees and expenses of such committee,
and that such statement, together with itemized vouchers of individual
and particular items, was filed on March 5, 1921, in the office of the
State Auditor; that on March 22, 1921, demand was made upon the
State Auditor to issue warrants to relators for the respective amounts
due for such employment, and that the State Auditor, in violation of his
duties, has refused so to do; that there is available and unexpended in
the legislative appropriation for per diem of officers and employees of
the Legislative Assembly approximately $4,692.40, and for printing,
miscellaneous expenses, and supplies of such Legislative Assembly ap-
proximately $22,257.97. The expense account attached to the petition
shows a total of $14,894.38: for supplies, $107.70; for stenographers,
comprising the bills of relators herein, $2,197.50; for witnesses, $637.90;
for other employees, including investigator, marshals, and accountants,
$3,951.28; for counsel, comprising the bills of Attorneys Murphy and
Sullivan, $8,000. This expense account is also verified as correct and
true by the chairman and secretary of this committee.

The Senate did not concur in the resolution appointing the audit com-
mittee nor in the resolution adopting the report and approving the ex-
penses incurred.

## CONTENTIONS

The petitioners, the appellants herein, contend that under the Con-
stitution (§ 48) each house possesses in addition to the specific powers
mentioned in the Constitution, all other powers necessary and usual in
the Legislative Assembly of a free state; that each house accordingly
possesses inherently full and ample power to function as a branch of the
Legislative Assembly, to appoint committees, to gather information, and
to carry on investigations and other work incident to the work of the
legislative body; that a committee of such legislative branch, properly ap-
pointed, may conduct the proceedings necessary; that it may incur ex-
penses properly a charge against the funds of the state as though they
had been contracted by the House, subject only to the constitutional limi-
tation that there must exist an appropriation therefor; that neither prior

Legislatures nor the executive department can curb or restrict these powers; that the legislative acts provide an orderly way of designating the employees of each house; that § 34, C. L. 1913, enumerating legislative employees and their compensation, does not restrict this power; that, pursuant to § 35, C. L. 1913, each house possesses the right by resolution to employ and pay such other employees as it might designate by resolution; that the work of this special house committee was properly a legislative function; that the petitioners, being, in fact, legal House employees, are entitled to be paid out of the legislative appropriation available either for miscellaneous legislative expenses or for the per diem of officers and employees.

The respondent maintains that the petition does not affirmatively show the appointment or the existence of the committee for a proper legislative purpose; that there exists neither constitutional nor statutory authority for the appointment of the relators as employees of such committee and for the payment of their salaries and expenses as such; that, pursuant to the Constitution, there exists neither express nor implied power for one branch of the Legislative Assembly to hire employees and to pay for their services, in the absence of legislative act or the concurrence of the other branch of the assembly; that it was competent and proper for the Legislative Assembly to provide specifically for legislative officers and employees and for their compensation; that it has so done pursuant to § 34, C. L. 1913; that § 35, C. L. 1913, does not permit the employment of stenographers, clerks, reporters, expert accountants, and lawyers by a committee appointed by the House; that, so far as § 35, C. L. 1913, delegates to the House the right to hire employees other than those mentioned in § 34, it must be construed to relate to employees of the same class, and not to delegate the further authority to a committee appointed by the House the power to appoint such employees. That furthermore, pursuant to § 42, C. L. 1913, the expenses of an investigating committee are payable only when authorized by the entire Legislative Assembly.

## DECISION.

The questions presented by the contending parties are res integra in this jurisdiction. To what extent is the power of one branch of the Legislative Assembly, when acting alone and without the concurrence of the other, restricted by the Constitution, or subservient to legislative en-

actment? The power to create an office, to hire public employees, and to create obligations of the state to be paid through the exercise of the taxing power is distinctly an expression of the sovereign will, legislative in its character. It is true that this court has heretofore held, concerning constitutional construction, that all governmental power not lodged elsewhere by the Constitution resides in the Legislative Assembly; that this assembly may exercise any power not denied to it by the Constitution of the state. State v. Boucher, 3 N. D. 389, 409, 410, 56 N. W. 142, 21 L.R.A. 539. This principle, of course, is now subject to the initiative and referendum powers of the people expressly reserved, pursuant to recent constitutional amendments. The Constitution, however, vests this legislative power in the Legislative Assembly. Article 15, Amend. Const. It also provides that the Senate and House jointly shall be designated as the Legislative Assembly. § 52, Const. This legislative power, to evidence its expression, requires the independent and concurrent action of each house. §§ 58, 65, 79, Const. It may not be evidenced by the joint action of both houses acting as one body. Each house must act independently as a separate body. Accordingly the possession of a broad governmental power in the Legislative Assembly beyond the express grant thereof in the Constitution does not serve measurably to aid in construing the powers of each house alone, when the Constitution expressly requires the expression of the legislative power to be by the concurrent and independent action of both branches. As stated in State v. Guilbert, 75 Ohio St. 1, 78 N. E. 931, 934, the legislative power, whatever may be the extent of that power, which is conferred upon the assembly, is not expressly delegated to a part of the assembly. The inherent or implied power possessed by both houses is not possessed by one when acting alone. Ex parte Caldwell, 61 W. Va. 49, 55 S. E. 910, 912, 10 L.R.A. (N. S.) 172, 11 Ann. Cas. 646. Recurrence therefore must be had to the express provisions of the Constitution in order to establish either express or inherent powers existent in either house when acting alone.

Section 47 of the Constitution provides that each house shall be the judge of the election returns and qualifications of its own members. Section 48 provides that each house shall have the power to determine the rules of proceeding and punish its members or other persons for contempt or disorderly behavior in its presence and to protect its members against violence, the offers of bribes or private solicitation, and with the concurrence of two-thirds, to expel a member and shall have all other powers

necessary and usual in the Legislative Assembly of a free state. These are the pertinent provisions of the Constitution expressly granting peculiar powers to each branch of the Legislative Assembly.

Upon these constitutional provisions, accordingly, the question arises of the authority of one branch of the Legislative Assembly, as a constitutional power, to select its employees, and determine their compensation. It is to be noted that express power in the Constitution is not granted to each house to appoint or designate its own officers and employees and to fix their salaries. Neither is there any restriction in the Constitution upon appointment of such employees or the determination of their salaries. Some state Constitutions expressly provide for and restrict the employees and their salaries. See James v. Cromwell, 129 Ky. 508, 112 S. W. 611; Walker v. Coulter, 113 Ky. 814, 68 S. W. 1108. Some Constitutions directly authorize each branch of the Legislative Assembly to choose its own officers. Tenny v. State, 27 Wis. 387; State v. Guilbert, supra. Our sister state of South Dakota has an express constitutional provision granting authority to each house to choose its own officers and employees and fix their pay, except as otherwise provided in the Constitution. Article 3, § 9, Const. S. D. The only provision of our Constitution concerning the officers of the Legislative Assembly and their compensation is § 45, which provides that each member shall receive as compensation $5 per day and 10 cents per mile of necessary travel. The power of each house, therefore, to select its public employees and determine their salaries must exist impliedly or inherently under the provisions quoted. Ordinarily the powers granted to each house in the Constitution are not to be extended by construction; in other words, the maxim is frequently applied, "Expressio unius est exclusio alterius." State v. Guilbert, supra; Ex parte Caldwell, 61 W. Va. 49, 55 S. E. 910, 912, 10 L. R. A. (N. S.) 172, 11 Ann. Cas. 646. Thus a constitutional provision granting to each house specific powers concerning contempt is also a limitation upon the powers to punish for contempt. See Kilbourne v. Thompson, 103 U. S. 168, 26 L. ed. 377, 386, 389. See 7 Ann. Cas. note 877. So a constitutional provision providing that a Legislature may punish by imprisonment any person not a member obstructing its proceedings places a limitation upon its power to punish for contempt. Ex parte Wolters, 64 Tex. Cr. R. 238, 144 S. W. 531, 583, 585, Ann. Cas. 1916B, 1071. If the provision of § 48 of the Constitution properly means that each house has all other powers necessary and usual in each branch of a Legislative Assembly, much force

would be added to the contention of the petitioners that there exists power for each house to select its own officers and employees and to fix their salaries. It may be noted, however, that the provision quoted refers to the powers necessary and usual in the Legislative Assembly. This means the power and the action of both the Senate and the House. In a former Constitution of Ohio there was a clause which provided that each house should have all powers necessary for a branch of the Legislature of a free and independent state. In a later amended Constitution the provision was that each house should have all of the powers necessary to provide for its own safety and the undisturbed transaction of its business. In State v. Guilbert, 75 Ohio St. 78 N. E. 931, 935, the court noted that there was a much broader grant of power in the former constitution than in the latter, and that the later provision operated as a limitation upon the powers of each house. If the contentions of the petitioners are recognized to their full extent, the action of one branch of the Legislative Assembly in selecting its officers and employees and determining their salaries is paramount to any expression of the legislative power by the Legislative Assembly, or through legislative enactment otherwise designating the officers and employees of each house and their salaries. To the contention that each house must necessarily possess the inherent and implied power to designate its own employees and fix their salaries without interference by the other house, or by legislative enactment, in order to give it the ability to function and perform its duties, the answer may be made that the sovereign expression of the people is to be found in the constitution and legislative enactment pursuant thereto, and to the concession made that under the express provision of the constitution, salaries may not be paid to public employees of each house unless there exists an appropriation by legislative enactment. See Ex parte Wolters, 64 Tex. Cr. R. 238, 144 S. W. 531, 586, Ann. Cas. 1916B, 1071.

In specific language the Constitution grants to the Legislative Assembly the exercise of legislative power. This is an express grant of power. When expressed, this legislative power is paramount, unless contrary to constitutional provisions. It must be apparent that this legislative power extends to the appointment of officers and employees of each branch of the Legislative Assembly and to the fixing and determination of their salaries unless there be a constitutional provision to the contrary. Accordingly it would appear that the voice of the sovereign will, expressed either in the constitution or in legislative enactment pursuant to express

constitutional power, is paramount to any action of either legislative branch operating contrary thereto. This does not imply that each branch of the Legislative Assembly may not appoint committees to investigate and otherwise for purposes of its legislative undertakings as an independent body. But it does necessarily follow that the constitutional restrictions specifically stated apply, and that the expression of the legislative will through legislative enactment by both branches of the Legislative Assembly as such is paramount and superior to independent action of either branch. Otherwise one branch of the Legislative Assembly might override through its independent action constitutional provisions and the expression of the sovereign will through such constitutional provisions in a valid legislative enactment. The proposition that a branch of the Legislative Assembly, although a lawmaking body, is itself subject to regulations by law and subject to constitutional provisions permitting expression of the sovereign will through legislative enactment, seems to be well recognized by the authorities. State v. Wallichs, 14 Neb. 439, 16 N. W. 481; Cook v. Auditor, 129 Mich. 48, 87 N. W. 1037; In re Chapman, 17 Sup. Ct. 677, 166 U. S. 661, 41 L. ed. 1154; Kilbourne v. Thompson, supra; State v. Guilbert, 75 Ohio St. 1, 78 N. E. 931. The Legislative Assemblies of this state have recognized this principle. Legislative enactments provide that each house may punish by imprisonment for contempt and breach of its privileges or the privileges of its members, § 29, C. L. 1913; that every person guilty of a contempt shall also be guilty of a misdemeanor, § 30, C. L. 1913; that a person summoned as a witness before either branch of the Legislative Assembly and before any committee authorized to summon witnesses who refuses to attend or who refuses to testify shall be guilty of misdemeanor. §§ 9333, 9334, C. L. 1913. A legislative enactment provides legislative officers and employees and for their compensation (§§ 34, 35, C. L. 1913); for methods of auditing and payment of salaries for such officers and employees (§ 37, C. L. 1913); likewise for a continuing appropriation for mileage and per diem of legislative members and the per diem of officers and employees thereof and for the expenses of the investigating committees when authorized by the Legislative Assembly, including postage, express, and other miscellaneous expenses, § 42, C. L. 1913. Again, a legislative enactment, in the general appropriation bill, provides an appropriation by law to cover such items of mileage and per diem, salaries of officers and employees, and expenses. Chap. 5, Sp. Sess. 1919. It would appear

that these legislative acts are valid and constitutional expressions of the sovereign will binding upon each branch of the Legislative Assembly as well as upon the citizens and people of this state.

The fact that different legislative bodies in this state · have at different times in their separate branches provided by resolution for increase in the number of employees or in the amount of pay or have otherwise provided for the payment of expenses such as in a contest case does not furnish a legislative construction in favor of the possession of inherent powers in each branch of the Legislative Assembly contrary to the expression of the legislative enactment duly enacted by the Legislative Assembly. The legislative enactments themselves furnish a criterion upon legislative construction and the acts of individual branches of the Legislative Assembly in connection therewith furnish further legislative construction in support of such legislative enactments. The questions there-- fore are now presented: (1) Was there a legislative enactment covering. the employment and the payment of the employees of this special House committee? and (2) Was there a legislative enactment providing for an appropriation and the method of disbursing such appropriation in connection with such employees? There can be no question that there is a legislative act covering the officers and employees of both branches of the Legislative Assembly, § 34, C. L. 1913. There can be no question again that under § 35, C. L. 1913, no employees of the Legislature other than those provided in § 34 shall be paid except by a resolution of the Senate or of the House. This implies that there may be other employees, and also ·that their pay may be fixed by a resolution of either branch. This section therefore does not negative the right to employ additional help. The contention of the respondent that the resolution shows that the investigating committee was not for proper legislative purposes should be denied, because it is to be presumed that such committee would function and has functioned as a proper legislative investigating committee until the contrary be made to appear. The contention likewise of the respondent that the committee itself employed this help, and that this legislative power could not be delegated to a committee, is answered by the two resolutions of the house which authorized the committee and fully ratified all of its actions both in the investigation had and in the help employed and expenses incurred. The crucial question remains, however, whether there exists a legislative enactment appropriating moneys for the expenses of such investigating committee, and providing the method by

which such appropriation shall be disbursed. The petitioners concede that there must exist an authorized legislative appropriation by law for such purposes pursuant to constitutional requirements. The question of the supreme authority of a legislative enactment is involved when it concerns the means or method of disbursing such appropriation as against the contention of the petitioners that there exists an inherent power in the house to appoint such committee and to incur expenses therefor, which must be paid provided there exists any legislative appropriation within the purview of the legislative functions of either branch of the Legislative Assembly. As heretofore stated, § 42, C. L. 1913, appropriates as a continuing appropriation moneys to pay the mileage and per diem of the members of the Legislative Assembly; the per diem of officers and employees of the Legislative Assembly; the expenses of investigating committees when authorized by the Legislative Assembly; necessary postage, express, and other miscellaneous expenses. Chap. 5, Laws Sp. Sess. 1919, recognizes this legislative act and makes it definite by providing specifically a definite amount for the mileage and per diem of members and for the per diem of officers and employees and for printing and miscellaneous expenses, etc. Section 42 provides an authority for the items of these expenses. Chap. 5 makes the same definite as a legislative appropriation in accordance with constitutional requirements. Section 42 is neither impliedly, nor expressly repealed by the general appropriation act. See State ex rel. Birdzell v. Jorgenson, 25 N. D. 539, 142 N. W. 450, 49 L. R. A. (N. S.) 67. Section 42 specifically provides for the expenses of investigating committees when authorized by the Legislative Assembly. No provision is found in a legislative act providing for the payment of, or for an appropriation for, the expenses of an investigating committee when not authorized by the Legislative Assembly. The Legislative Assembly, as the Constitution states, is composed of both a house and a senate. It appears from the petition herein that the petitioners were employees of this House investigating committee. It appears that the expense incurred was an expense of this investigating committee. It appears further that the petitioners were appointed by this investigating committee, that their duties were concerned with this investigating committee, and that their recognition by the House as a body was had through a resolution adopting the report of this investigating committee wherein the moneys due them for work in behalf of this committee were embodied. The Legislative Assembly neither authorized the appointment nor the expenses of such in-

vestigating committee. It follows, therefore, in accordance with the discussion herein had, that there exists no legislative appropriation and no legislative authority for the disbursement out of the balance of funds appropriated of moneys for the petitioners.

The action of the trial court in sustaining the motion to quash was therefore proper, and its order should be affirmed.

ROBINSON, C. J., concurs.

GRACE, J. (concurring in result). The relators applied for a writ of mandamus to compel the State Auditor to issue certain warrants. In the lower court a demurrer was interposed to the petition, and a motion made to quash it. The motion was by the trial court sustained. Appeal was taken to this court, and the trial court's order, by the main opinion, is affirmed, and we concur in the result at which the main opinion has arrived.

BIRDZELL, J. (dissenting). I dissent from the conclusions reached by the majority for the reason that in my opinion the applicable legislative enactments have not been properly construed. I express no opinion on the constitutional question discussed, as I do not deem it involved. In order to set forth clearly the basis for this difference of opinion, it is necessary to briefly state the substance of the provisions of the statutes relating to the payment of legislative expenses. Section 34, C. L. 1913, enumerates the officers and employees of the Senate and House of Representatives of the Legislative Assembly. Section 35 reads:

"No employees of the Legislature other than those provided by § 34 shall be paid, except by a resolution of the Senate or House of Representatives."

Prior to the time when the Legislature adopted the policy of passing a budget or general appropriation bill biennially, provision was made for a standing appropriation covering legislative expenses as follows (§ 35, R. C. 1905):

"There is hereby appropriated out of any money in the state treasury, not otherwise appropriated, as a standing and continuing appropriation, such a sum as may be necessary to pay the mileage and per diem of members and the salaries of the officers and of the employees of the Legislative Assembly; and the State Auditor is authorized to draw his warrants on the State Treasurer for such sums as may from time to time become due to such members and employees."

It will be noticed that those employed either by the House of Representatives or the Senate are referred to in this standing appropriation as "employees of the Legislative Assembly," even though their employment be effected by resolution of but one of the houses. Chap. 164, § 2, Laws of 1907. Payment is directed to be made "upon an account certified as correct by the presiding officers of the respective houses, duly attested by the secretary and chief clerk thereof, and when so audited and attested the State Auditor is authorized and directed to draw his warrants therefor upon the State Treasurer." Section 30, R. C. 1905. In 1913 the section providing for the standing appropriation was amended. Chap. 28, S. L. 1913. It will be noted that as the section stood prior to 1913 it appropriated merely for the mileage and per diem of members and salaries of officers and employees. The amendment of 1913 made no substantial change in this, but it added to the appropriation an amount necessary to pay "the expenses of investigating committees when authorized by the Legislative Assembly, necessary postage, express, telegrams, telephone and such other miscellaneous expenses as may be authorized by the Legislative Assembly, except printing." Section 2 of chap. 28 is explanatory of the emergency that brought forth the amendment. It reads:

"This act shall be effective from January 1st, 1913, for the reason that at this time there appears to be no appropriation to cover the expense of the Legislative Assembly outside of printing and mileage, and per diem of members and per diem of officers and employees. The lack of an appropriation leaves the State Auditor without authority to open an account for legislative expense, and as it is important and necessary that expenses of this kind should be kept in a separate account for convenience for reference, this act shall be effective from January 1st, 1913, so that it may cover the 13th Legislative Assembly now in session."

The legislative expense of that year, 1913, was paid under the authority of § 35 as so amended; there being no provision in the general appropriation law covering the matter. All expenses of the character named have been paid out of this standing appropriation, and reference to the files in the Auditor's office discloses that among the expenses so paid upon vouchers approved by the officers of the House alone were expenses of the character of those involved in this case, incurred in connection with a certain bribery investigation involving only the House. In 1915 and subsequent legislative years there was included as a subdivision in the general appropriation bill specific appropriations covering the matters pre-

viously embraced in § 42, C. L. 1913. The following is a type of such appropriation (chap. 43, § 3, subdss. 57, Session Laws of 1915) :

"Subdivision 57:

### The Fifteenth Legislative Assembly.

For the payment of salaries and mileage of members, per diem of officers and employees, printing, and miscellaneous expenses and supplies, for the Fifteenth Legislative Assembly, the following sums:

| | |
|---|---|
| Mileage and per diem of members | $ 57,000 00 |
| Per diem officers and employees | 20,000 00 |
| Printing | 30,000 00 |
| Miscellaneous expenses and supplies | 5,000 00 |
| Total | $112,000 00" |

Substantially the same, differing as to amounts, will be found in subsequent session laws. See chap. 24, subdss. 54, Session Laws of 1917; chap. 16, subdss. 46, Session Laws 1919; chap. 5, § 25, Laws of Special Session 1919. From this it will be seen that the section which is made the basis of the decision in the majority opinion has practically been a dead letter since the inauguration in 1913 of the practice of passing a general appropriation bill (made applicable to the Legislature in 1915). In other words, § 35, R. C. 1905 (§ 42, C. L. 1913), has never served any purpose except as a standing appropriation, and it can scarcely continue to serve this purpose while specific appropriations are made covering the same items.

According to the majority opinion the relators are legislative employees, but yet it is held that, since they were assigned to work with an investigating committee, they can receive no compensation for their services because the committee expenditures have not been authorized by the Legislative Assembly, meaning the House and Senate combined. It is said that this conclusion is rendered necessary by the language of § 42, C. L. 1913, which appropriates money to pay "the expenses of investigating committees when authorized by the Legislative Assembly." The construction adopted depends for its validity upon the answers to two questions: First, what restrictive force should be given to language contained in a standing appropriation after it has been in effect superseded by specific appropriations? and, second, what is meant by the expression "authorized by the Legislative Assembly"?

It is apparent that the majority opinion gives effect to this standing

appropriation law (§ 42, C. L. 1913), notwithstanding subsequent general appropriation bills covering the same items. It is not my purpose to engage in an extended discussion of the opinion from this standpoint, as I regard it as being erroneous upon the second ground. But in passing I deem it well to point out the repealing provision of the general appropriation law of 1915, which for the first time embraced specific appropriations for legislative expenses. Section 4 of that act (chap. 43, Session Laws of 1915), among other things, provides:

"* * * It is the intent hereby to enact an exclusive general appropriation bill, and to repeal each and every act and all parts of acts now existing which appropriate or purport to appropriate money for any of the offices, officers, purposes and things set out in § 3 hereof in so far as the same conflicts therewith, or relate to appropriations for the same matters or purposes provided for therein."

To like effect see chap. 24, § 4, Session Laws 1917, chap. 16, § 3, Session Laws of 1919, and chap. 5, § 26, Laws of Special Session, 1919.

That the items embraced in a general appropriation bill supersede standing appropriations for the same or kindred objects and effect an implied repeal, see State ex rel. Wallace v. Jorgenson, 34 N. D. 527, 159 N. W. 35. Under the decision referred to and the subsequent specific appropriations for legislative expenses, there is clearly no standing appropriation for the expense of legislative investigations as such. And such expenses could not be paid even if authorized by both branches of the Legislative Assembly except as they are payable from the items designated in the general appropriation bill as "per diem of officers and employees, printing, and miscellaneous expenses and supplies." See chap. 5, § 25, Laws Special Session, 1919.

Coming now to the question upon which the majority opinion is based: What is meant by the expression "authorized by the Legislative Assembly"? It will be noticed that § 42, C. L. 1913, before as well as after its amendment, was a standing appropriation for the payment of the members, officers, and employees "of the Legislative Assembly." Now, strictly and literally speaking, there is no such class of employees authorized to be employed as employees of the Legislative Assembly. Those employed are either employees of the Senate or the House of Representatives. They are not only specifically referred to as such in § 34, but § 35, C. L. 1913, expressly authorizes either house by its own resolution to employ

persons other than those enumerated in § 34; and § 37 provides for the auditing of vouchers covering the employment by the officers of the respective houses, not both houses. In my opinion, when the Legislature used the expression in § 42 "Legislative Assembly" with reference to the expenses of investigating committees, it used it in the same sense that it was used in the remainder of the section with reference to employees and miscellaneous expenses; and when it directed the payment of expenses of investigating committees "when authorized by the Legislative Assembly" it had in mind such authorization as would be regarded as sufficient for the employment of an additional clerk or for the purchase of postage stamps. In other words, when either branch of the Legislative Assembly, acting in pursuit of its constitutional functions, finds that it must·incur some expense in order to exercise its legitimate powers, it has authority to do so without obtaining consent of the other. And when these powers are so exercised by either branch the expenditure is "authorized by the Legislative Assembly" to the same extent and in the same manner as though it were for an ordinary employee of the "Legislative Assembly." Quotations are from §42, C. L. 1913. The purpose is not to impose a direct restraint upon one house by the other, but to make provision for paying the expenses of an authoritative legislative investigation. If the power to investigate belongs to either house acting independently of the other, the expense of the investigation is just as much "authorized by the Legislative Assembly" as is an expenditure for one of its own employees who is referred to in the same section as an "employee of the Legislative Assembly." Why adopt a construction that renders one house directly dependent upon the other for permission to exercise its constitutional functions in the manner dictated by its own judgment? Does it not detract from the benefits which presumably flow from à bicameral legislative system? There is, of course, the inherent limitation that expenditures by one or both houses cannot exceed the amount appropriated for the specific purpose. It is to be borne in mind, too, that the investigation in connection with which the relators served was one conducted during the constitutional session of the house, so that no question is presented as to the power of one house to act alone or. through committees after the expiration of a session. If the majority opinion is a sound construction of § 42, C. L. 1913, which, as previously indicated, has been practically rendered a dead letter by the successive general appropriation bills, then no bill for postage, telegrams, telephone, and

other miscellaneous expenses incurred by one house during a regular session can properly be paid by the State Auditor in the absence of some authorization by the other branch of the assembly, for identical language is employed with reference to the authority for such expenditures.

It is a safe assumption that legislative business has never been carried on in this manner, and it is doubtful if during the eight years that this legislation has been on the statute books there has been a single legal payment of expenses made under it—that is, legal according to the construction of the majority opinion. I am aware of nothing in our legislative history that furnishes a basis for such a conclusion as a practical construction of the legislation touching this subject-matter, and it certainly makes one house dependent upon the other to an extent heretofore uncontemplated. All the legislation clearly indicates that each house is to act independently in the performance of its legislative functions, but under the construction of the majority opinion in this case each can tie the hands of the other at will. The purse strings are admittedly in the hands of the Legislature, and both houses combined, through appropriation bills, may exercise a wholesome restraint upon the powers of each house to incur expenses. But where the appropriation is made and either house has proceeded in good faith, as must be assumed, to exercise the powers conferred upon it and has incurred expenses within the appropriation in so doing, in my opinion it is more consonant with the dignity of the state to meet its just obligations than to seek to justify a refusal by a restricted construction of legislative enactments never before given such an application.

In my opinion the compensation of the relators in the instant case should be paid as an item of expense "authorized by the Legislative Assembly" within §.42, C. L. 1913, for meeting which there is an existing appropriation. The case of the relators is even stronger than this. They are legislative employees. It must stand admitted, as previously pointed out, that one house does not need the assent of the other for the hiring of additional employees. This is according to the express language of the statute. Section 35, C. L. 1913. The only reason assigned by the majority for not directing payment to these employees is that they were assigned to duty with an investigating committee which functioned without the assent of the Senate. It is respectfully submitted that the relators do not lose the character of legislative employees by reason of being assigned to work with an investigating committee. Clearly the writ should issue.

I am authorized to say that Mr. Justice CHRISTIANSON concurs in this opinion.