THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN A. HASTINGS, Appellant, against SAMUEL H. HOFSTADTER et al., Constituting a Legislative Committee, Respondents.

In the Matter of JOHN A. HASTINGS, Appellant; SAMUEL H. HOFSTADTER et al., Constituting a Legislative Committee, Respondents.

426

(Argued February 8, 1932; decided March 3, 1932.)

*Frank P. Walsh* for appellant. The appellant being a member of the Legislature of the State of New York and attending upon its session is privileged from arrest in a

civil action or proceeding under the provisions of section 2 of the Legislative Law, and the court was without authority to adjudge him guilty of contempt and to direct that he be committed therefor. (*Matter of Superintendent of Poor,* 6 App. Div. 144; *Matter of Union Bank of Brooklyn,* 147 App. Div. 593; 204 N. Y. 313; *Typothetæ of City of New York* v. *Typographical Union No. 6,* 117 N. Y. Supp. 144; 132 App. Div. 931; 196 N. Y. 571; *People ex rel. Negus* v. *Dwyer,* 90 N. Y. 402; *Eastern Concrete Steel Co.* v. *Bricklayers' & Mason Plasterers' International Union,* 200 App. Div. 714; *People ex rel. Frank* v. *McCann,* 227 App. Div. 57; *Rutherford* v. *Holmes,* 5 Hun, 317; 66 N. Y. 368; *Sherwin* v. *People,* 100 N. Y. 351.) The power of the legislative committee to issue the subpœna ended on the dissolution of the Legislature, December 31, 1931, and the subpœna having been issued and served January 4, 1932, four days after the dissolution of the Legislature of 1931, the same was void and of no legal force and effect. (*Doyle* v. *Hofstader,* 257 N. Y. 244; *People ex rel. Argus Co.* v. *Palmer,* 12 Misc. Rep. 392; *Matter of Caldwell,* 61 W. Va. 49; *Matter of Superintendent of Poor,* 6 App. Div. 144; *Anderson* v. *Dunn,* 6 Wheat. [U. S.] 204; *Kilbourn* v. *Thompson,* 103 U. S. 168; *McGrain* v. *Dougherty,* 273 U. S. 135; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463.) The service of the subpœna was void, and the order of the court finding the appellant guilty of contempt and ordering his arrest was erroneous. (*Everard* v. *Brennan,* 2 City Court Rep. 351; *Miner* v. *Markham,* 28 Fed. Rep. 387; *Ross* v. *Brown,* 7 Penn. C. C. Rep. 142.)

*Samuel Seabury* and *George Trosk* for respondents. The service of a subpœna does not constitute an arrest, and, accordingly, a legislator is not privileged from the service of a subpœna or the duty to respond to it. (*Merrick* v. *Giddings,* 11 Dist. of Col. 55; *Berlet* v. *Weary,* 67 Neb. 75; *Howard* v. *Trust Co.,* 12 Dist. of Col. App. Cases, 222; *Rhodes* v. *Walsh,* 55 Minn. 542; *United States*

v. *Cooper*, 4 Dallas [U. S.], 317.) The joint resolution was ratified and effectuated by confirmatory legislation. (*Matter of Davis*, 58 Kan. 368; Laws of 1931, chaps. 637, 773 and 774; *People* v. *Learned*, 5 Hun, 626.) The order adjudging the appellant in contempt of court was right in providing that he should be imprisoned for thirty days, and that he should be apprehended and brought before the committee to testify. (Civ. Pr. Act, § 405; *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465; *People* v. *Keeler*, 99 N. Y. 463; Penal Law, § 601.)

CARDOZO, Ch. J. On March 23, 1931, a joint resolution was adopted by the Senate and Assembly for the appointment of a committee to investigate the administration of the departments of the government of the city of New York, the report to be submitted not later than February 1, 1932. The resolution provided that the committee might act " during the session of the Legislature and during the recess or after adjournment thereof, with the same power and authority it would have were the Legislature in session."

On January 4, 1932, a subpœna under the hand of the vice-chairman of the committee was served upon the appellant, a member of the Senate, requiring him to attend as a witness on the same day and give testimony as to matters within the scope of the inquiry. The appellant declined to appear, maintaining that the service of the subpœna was a breach of his privilege as a member of the Senate, and that the jurisdiction of the committee had expired by lapse of time. A motion to vacate the subpœna was denied, and the denial affirmed by the Appellate Division. The appellant still declining to appear, a motion was made in behalf of the committee to adjudge him in contempt. This motion was granted. By an order of the Supreme Court, which the Appellate Division has affirmed, the appellant was condemned to imprisonment for thirty days, and the Sheriff of any

county in which he might be found was directed to apprehend him and bring him before the committee, or a duly constituted subcommittee, in response to the subpœna.

The several objections to the process thus challenged by the witness will be considered in succession.

(1) "A member of the legislature shall be privileged from arrest in a civil action or proceeding other than for a forfeiture or breach of trust in public office or employment, while attending upon its session, and for fourteen days before and after each session, or while absent, for not more than fourteen days during the session with the leave of the house of which he is a member (Legislative Law, § 2; Cons. Laws, ch. 32). The appellant insists that the service of a subpœna requiring his attendance before a committee of the Legislature is a breach of the privilege thus secured to him by statute. Manifestly the letter of the privilege does not offer him exemption. A subpœna is not an arrest, though there are circumstances in which disobedience to its command may give rise to an arrest. If that infirmity in the claim of privilege were to be disregarded, others would remain. The execution by the Sheriff of a warrant to apprehend a defaulting witness and bring him before the Legislature or one of its committees (Civ. Pr. Act, § 406, subd. 2), is not an arrest " in a civil action or proceeding." It is not in aid of a proceeding in a court of justice. It is in aid of a legislative function, the ascertainment of facts whereon to build the statutes of the future (*People ex rel. Karlin* v. *Culkin,* 248 N. Y. 465, 478). The judge issuing the warrant is merely the implement of the Legislature, appointed by statute to act in its behalf. The Sheriff executing the warrant is sheltered by a like consent. There is no privilege from arrest that can be asserted against the Legislature itself (*Matter of Oscar E. Keller,* 67th Congress, Congressional Record, vol. 64, part 3, p. 2410, subcommittee report on House Resolution 425, Jan. 6, 1923; cf. Cushing, Law & Practice of Legis-

lative Assemblies, § 942; Hansard's Parliamentary Debates [2d series], vol. 18, pp. 1070, 1086).

The same considerations answer the appellant's argument that the range of the privilege must be measured by the standards of parliamentary law and practice, and that so viewed the service of a subpœna is an arrest within the spirit of the statute, even if not within the letter. We do not need to determine whether this would be so if the service were in aid of a proceeding pending in a court. There is respectable authority for each of the opposing views (Cushing, Law & Practice of Legislative Assemblies, § 598; Jefferson's Manual, § III; Stubbs, Const. Hist. of England [5th ed., 1903], vol. 3, p. 513; *Everard v. Brennan,* 2 City Court Reports, 351; *Matter of Potter,* 55 Barb., appendix, p. 625; *contra, Berlet v. Weary,* 67 Neb. 75; *Rhodes v. Walsh,* 55 Minn. 542; *United States v. Cooper,* 4 Dallas [U. S.], 341; [cf. *People ex rel. Broderick v. Morton,* 156 N. Y. 136; *Williamson v. United States,* 207 U. S. 425, 434]). Choice may prudently be postponed until choice becomes essential. The decisive feature in this case is the origin of the mandate, the character of the governmental agency whence comes the summons to appear. The privilege dissolves when the member in asserting it is guilty of disloyalty to the duties of his membership. " It is in the power of the Parliament and doth not bind the Parliament itself " (Vol. 64, Congressional Record, part 3, pp. 2415, 2422, citing Resolution of the House of Commons, adopted 1641; also Blackstone, Commentaries, book 1, p. 163). " The injury done to the individual " is merely " an injury done to the house of which he was a member " (Stubbs, *supra*). There is no injury to the agent when the principal consents.

(2) The subpœna is assailed upon the ground that the life of the committee ended upon the final adjournment of the Legislature on April 10, 1931, or, at the latest, on December 31, 1931, with the end of the term of office for which one of the two houses had been chosen.

We have little difficulty in overruling this contention

in so far as it has relation to the life of the committee during the months of adjournment and until the end of the year. The great weight of judicial authority sustains the power of the Legislature to invest its committees with power to function though the session is over (*People v. Learned*, 5 Hun, 626; *Matter of Davis*, 58 Kan. 368, 370; *Matter of Caldwell*, 61 W. Va. 49; *Commonwealth v. Costello*, 21 Penn. Dist. Rep. 232; *Commercial & Farmers Bank v. Worth*, 117 N. C. 146). A distinction has been drawn between a resolution by a single house (*Matter of Caldwell, supra*) and the joint action of the two houses, but the distinction is unimportant here where the resolution was concurrent. To the weight of judicial authority is to be added that of a practical interpretation ancient and unbroken. Many instances, brought together by the industry of counsel for the committee, are stated in the brief. A closer question arises when we ask ourselves whether a mere resolution may invest a committee with power when the year is at an end for which the Assembly was elected. Undoubtedly the members of the committee will be permitted to report, for to say that they may do this is to say little more than that the Legislature is at liberty to hear them if it will. This does not mean of necessity that a committee appointed in one year may exercise in a later year all the powers that belonged to it at the time of its creation, the power to disburse the appropriated moneys, the power to subpœna, and the power to punish for contempt. For many purposes, a newly-elected house is deemed a newly created body, its life not continuous with that of the house that went before it (*Opinion of the Justices to the Senate*, 239 Mass. 603; cf. *Matter of Hague*, [N. J.] 147 Atl. Rep. 220). This is probably the reason why the rules of each house are adopted anew when a new house is elected, though the long continued practice is to renew them without change (Cushing, *supra*, § 613; Jefferson's Manual [ed. Deschler], § XI, p. 117). Accordingly,

treatises of weight give support to the view that the authority of a legislative body may not be continued by resolution beyond the expiration of the term for which the body was elected, and that if life is to be prolonged thereafter, the result must be attained by the adoption of a statute (Hinds, Precedents of the House of Representatives, vol. IV, § 4545; Jefferson's Manual, § LI, p. 249; Cushing, *supra*, § 497).

We leave the question open, for the record now before us does not require us to answer it. Statutory confirmation after a resolution has been adopted is as effective as statutory authority in advance of its adoption (*People* v. *Learned*, 5 Hun, 626). Such confirmation is clearly visible when the course of legislation with reference to this committee is followed through the year. By chapter 637 of the Laws of 1931, which became a law April 22, 1931, there was appropriated in aid of this inquiry the sum of $250,000 to be added to a like sum included in the budget. The language of the act is that " the sum hereby appropriated shall be available for the use of the joint legislative committee appointed pursuant to joint resolution of the legislature, to investigate the affairs of the city of New York, and shall be payable only on audit of the comptroller, after approval by the speaker of the assembly and the president *pro tempore* of the senate and also by the chairman of the committee." The Legislature that passed this act must have known that the committee was to continue till February of the next year when its report would be presented. The conclusion is almost unthinkable that the appropriation was not to be available for the printing of the report and for other necessary disbursements during the weeks immediately preceding the date of presentation. If the committee could exercise its functions by drafts on the public purse, it could exercise them also by continuing to inquire. Even more significant are the provisions of a later act (Laws of 1931, ch. 773) adopted on August 28, 1931, the

work of a special session called by the Governor for the declared purpose of supplying this committee with powers denied to it before (*Matter of Doyle,* 257 N. Y. 244). The statute begins with a declaration that "when used in this chapter ' committee ' shall be deemed to refer to and mean the joint legislative committee of the senate and the assembly, appointed pursuant to the joint resolution adopted by the senate and the assembly on March 23, 1931, to investigate, inquire into and examine the administration and conduct of the various departments of the government of the city of New York, and of the counties, the state and local courts, and other agencies geographically included within said city." There is then a grant of authority to give immunity to witnesses who may be compelled to give testimony that would otherwise tend to expose them to punishment for crime. Here is an unmistakable recognition of the organization of the committee as established by the concurrent resolution and an unmistakable confirmation of its continuing validity. Mere incidents and details, not essential to the life of the investigating body, capacities and functions capable of being divested without destroying its existence, will not be held to have been confirmed by the appropriation of a sum of money, nor even, it may be, by the later grant of added powers. On the other hand, those terms of the resolution that define the essential organization of the investigating body, its birth and life and death, must be deemed to have been ratified by acts of recognition so explicit and persuasive.

Holding, as we do, that the intention of the lawmakers was to confirm the existence of the committee as the concurring resolution had attempted to create it, there is left the question whether any rule of law exists whereby effect must be refused to the intention so declared. No such obstacle is disclosed to us by our examination of the precedents, nor does any become apparent from the principles that fix the limits of legislative power. No

one would doubt the validity of a statute to the effect that whenever a legislative committee has been appointed in one year, its members, if re-elected, shall continue to constitute the committee during the next year, unless and until their membership is otherwise revoked. What the Legislature may say in a statute applicable to legislative committees generally; it may say with the same validity in defining the life and the functions of a particular committee. Far from departing thereby from the principles and precedents of parliamentary procedure, it is following the very method to which consecrating usage has affixed the stamp of regularity (Hinds, *supra;* Jefferson, *supra*).

(3) The question remains as to the sanctions available to compel submission to the writ.

By Legislative Law (§ 62-a), " the provisions of the civil practice act in relation to enforcing obedience to a subpœna lawfully issued by a judge, arbitrator, referee or other person in a matter not arising in an action in a court of record apply to a subpœna issued by a legislative committee as authorized by this section."

The provisions of the Civil Practice Act prescribing the procedure for the enforcement of a subpœna issued by a judge, arbitrator, referee or other person in a matter not arising in an action in a court of record, or by a board or committee, are contained in section 406.

By subdivision 2 of that section, a person so subpœnaed who fails to obey the subpœna without reasonable excuse " is liable, in addition to any other punishment which may be lawfully inflicted therefor, for the damages sustained by the person aggrieved, in consequence of the failure, and fifty dollars in addition thereto, to be recovered in the same manner as prescribed in the case of a person failing to obey a subpœna issued out of a court of record." In addition the court or a judge thereof " upon proof by affidavit of the failure to attend, must issue a warrant to the sheriff of the county commanding him to

apprehend the defaulting witness and bring him before the officer, person or body before whom or which his attendance was required."

By subdivision 3 it is provided that " if the person subpœnaed and attending or brought as prescribed in the last subdivision before an officer or other person or a body refuses without reasonable cause to be examined, or to answer a legal and pertinent question, or to produce a book or paper which he was directed to bring by the terms of the subpœna, or to subscribe his deposition after it has been correctly reduced to writing, the person issuing the subpœna, if he is a judge of a court of record, or not of record, may forthwith, or if he is not, then any judge of such court may upon proof by affidavit of the facts, by warrant commit the offender to jail, there to remain until he submits to do the act which he was so required to do or is discharged according to law."

The sanctions available against the appellant at this stage of the inquiry are those prescribed by subdivision 2. A warrant may issue to the Sheriff to apprehend him and bring him before the committee or subcommittee issuing the subpœna. In addition he is liable to any other punishment which may lawfully be inflicted for his refusal to obey the writ. He may be prosecuted for a misdemeanor (Penal Law, § 1329). "A person who, being duly summoned to attend as a witness before either house of the legislature or any committee thereof, authorized to summon witnesses, refuses or neglects without lawful excuse to attend pursuant to such summons, is guilty of a misdemeanor " (Penal Law, § 1329).* He may be punished as for a contempt by the Legislature itself (Legislative Law, § 4). There is no statute, however, whereby the failure to obey a subpœna issued by the Legislature may be punished by the judiciary as constituting a contempt of court. So it was held over thirty-

* Refusal to obey a subpœna issued by a *court* is punishable as a misdemeanor, but under another section (Penal Law, § 600, subd. 4).

five years ago by an able court in determining the method of enforcing a subpœna issued by a board of supervisors (*Matter of Superintendent of Poor*, 6 App. Div. 144). We have discovered no statute enacted in the interval whereby power has been enlarged.

The proper procedure is, therefore, this: a warrant shall issue to the Sheriff of any county wherein the appellant may be found commanding the officer to apprehend the defaulting witness and bring him before the committee, or the subcommittee thereof before whom his attendance was required. If the witness when brought before such committee or subcommittee refuses to be examined, or to answer a legal and pertinent question, or to produce a book or paper, the court or a judge thereof, upon proof by affidavit of the facts, may by warrant commit the offender to jail, there to remain until he submits to do the act which he was so required to do or is discharged. The sentence of imprisonment at this stage of the inquiry must be held to be premature and thus illegally imposed. Whether imprisonment will become necessary hereafter, the sequel will decide.

The order denying the motion to vacate the subpœna should be affirmed.

The order adjudging the appellant in contempt and prescribing the remedies whereby the subpœna may be enforced should be modified in accordance with this opinion and as modified affirmed.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.