In the Matter of
**PETITION OF THE FINANCE COMMITTEE OF THE
LEGISLATURE OF THE VIRGIN ISLANDS
TO COMPEL PERCY DE JONGH,**
Commissioner of Finance,
**TO APPEAR AND PRESENT DOCUMENTS**

No. 12078

United States Court of Appeals
Third Circuit

Argued January 29, 1957

Decided April 2, 1957

*See, also, 242 F.2d 902*

LEON P. MILLER, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

ALMERIC L. CHRISTIAN, Christiansted, St. Croix, Virgin Islands, *for appellee*

Before MAGRUDER, WOODBURY and KALODNER, *Circuit Judges*

MAGRUDER, *Circuit Judge*

We have here a case of more than ordinary difficulty, involving a delicate issue of power as between a popularly elected legislature of a dependent unincorporated territory and an executive department presided over by a governor appointed by the President and confirmed by the Senate of the United States. More concretely, the question is whether, under the (1954) Revised Organic

610

Act (prec. 1 V.I.C.), 68 Stat. 497, 48 U.S.C. § 1541 et seq., the Legislature of the Virgin Islands, shortly prior to its adjournment sine die subject only to possible recall by the governor in special session, is authorized to direct one of its committees to institute an investigation of expenditures in the executive department — an investigation which may, and necessarily will, extend beyond the date of such adjournment sine die, with continuing power in the legislative committee thereafter to subpoena witnesses and documents from the executive department. In other words, the question is whether the power to investigate is so subordinate and ancillary to the power to legislate that the former power must be deemed to have lapsed when the latter power is at an end (or suspended).

■■ No doubt the Congress could have made specific provision either way in the case of the Legislature of the Virgin Islands. We do not deny that a lawyer-like opinion might be drafted pointing to the conclusion that the Congress must have "intended", in passing the Revised Organic Act, to withhold this investigatory power from a designated legislative committee after the legislature had adjourned its legislative session sine die. But in all candor we have found neither in the terms of the Revised Organic Act nor in its legislative history any indication that the members of Congress ever adverted to the issue now before us, or had any real "intention" with respect thereto. The failure of the Congress to speak with clarity and precision on the point leaves us to deal as best we may with an ambiguous and dubious question of statutory interpretation. In these circumstances we are inclined to adopt an interpretation which we believe to be more in harmony with the declared purpose of the Congress to "give a greater degree of autonomy, economic as well as political, to the people of the Virgin Islands." S.Rep. No. 1271, 83d Cong., 2d Sess.,

April 29, 1954, 2 U. S. Code Cong. & Ad. News 2586. And we think it is not without significance that the interpretation which we incline to favor is in accord with the contemporaneous interpretation of the Revised Organic Act by the legislature itself, and also apparently by the governor, as we shall undertake to show. These are agencies set up in the Act to administer its provisions, and in a doubtful case the interpretation given to the Act by such agencies is entitled to considerable respect. See Fleming v. Mohawk Co., 1947, 331 U.S. 111, 116, 67 S. Ct. 1129, 91 L.Ed. 1375; United States v. American Trucking Associations, Inc., 1940, 310 U.S. 534, 549, 60 S. Ct. 1059, 84 L. Ed. 1345. Also, our favored interpretation is that of Circuit Judge Hastie, sitting in the District Court by special designation, who wrote a careful opinion in this case. We affirm the final decree of the District Court.

Much stress is laid by appellant upon various decisions of state courts interpreting the investigatory powers of their legislatures under their respective state constitutions. Decisions by the Supreme Court of California are particularly relied on. See Petition of Special Assembly Interim Committee on Public Morals of Cal. Legislature (In re Southard), Cal. 1938, 83 P.2d 932, and on rehearing, 1939, 13 Cal.2d 497, 90 P.2d 304; Swing v. Riley, Cal. 1938, 83 P.2d 938, and on rehearing, 1939, 13 Cal.2d 513, 90 P.2d 313. By means of a simple syllogism these decisions arrive at the conclusion contended for by appellant here. The essential reasoning of the Supreme Court of California may be seen from the following quotation:

"Under the various state constitutions, including that of California, the legislature, with the approval of the governor, has the power to legislate — that is the power to make laws; each house of the legislature has the power to initiate legislation; incidental to and implied from this power to legislate, each house has the implied and auxiliary power to appoint committees for

the purpose of aiding it in the proper performance of this function; this power to appoint committees exists by implication, only because of the existence of the express power to legislate; consequently, when the power to legislate ceases, then the power to investigate for the purpose of aiding the legislature in exercising this power ceases, or stated another way, when the main power of legislating dies the incidental or implied power dies with it; that upon adjournment sine die the legislative powers of both houses of the legislature cease; that thereafter the members of the legislature have no legislative powers unless a special session is called which can only be done at the call of the governor, and at which only those matters set forth in the call may be considered; that during a session each house can function separately as to the introduction of bills, but it has no such power after adjournment; that each regular session of the legislature is composed of a different body from its predecessor; that the only lawful purpose of a committee is to investigate the facts and to report back to the body creating it; that the power conferred on a committee is a delegated power, and the legislature cannot lawfully delegate power that it itself does not possess; that neither house has the power to appoint a committee to function when the legislature itself could not act in the premises." Petition of Special Assembly Interim Committee, etc. (In re Southard), supra, 83 P.2d at page 936.

This conclusion of the California court seems to us to be an obvious non sequitur. It may be granted that a legislature loses the present power to legislate upon the adjournment of a session sine die. But its members still constitute the legislature, whose legislative powers are merely dormant and suspended between sessions, not finally terminated. Just prior to an adjournment, a matter may come up needing to be investigated by a legislative committee which could not possibly complete the investigation and report prior to adjournment. Granting that the function of such a committee is limited to investigation as an aid to possible legislation, is there any incongruity in setting such investigations afoot, with instructions to the committee to report to the legislature at its

next regular or special session, or even to the succeeding legislature? Some state courts have perceived no such incongruity. See, for instance, State ex rel. Robinson v. Fluent, 1948, 30 Wash.2d 194, 191 P.2d 241. The Washington court said, 191 P.2d at page 245:

"The function of investigation during the interim is an inherent power in the legislature. If there is not present in the constitution a restraint against the exercise of interim investigatory power by the legislature through joint or concurrent action, that power, which is incidental to the function of making laws, may be projected into the interim."

In People v. Backer, 1920, 113 Misc. 400, 185 N.Y.S. 459, 461, the court held:

"There being no constitutional inhibition upon the power of the Senate and Assembly to confer power upon the committee to sit during the recess or after the adjournment of the Legislature, the contention of the defendant that such a power could not be granted by concurrent resolution is, I think, without merit."

Chief Judge Cardozo, in what was perhaps a dictum, in People ex rel. Hastings v. Hofstadter, 1932, 258 N.Y. 425, 431, 180 N.E. 106, 108, 79 A.L.R. 1208, stated:

"The great weight of judicial authority sustains the power of the Legislature to invest its committees with power to function, though the session is over."

We do not stop to examine the state court decisions more in detail. They are not controlling here because we are concerned with the construction of an Act of Congress, namely, the Revised Organic Act of the Virgin Islands, 68 Stat. 497.

As background to the passage of that Act, it is relevant to refer to the situation as it existed under the Organic Act of 1936 (prec. 1 V.I.C.), 49 Stat. 1807, 48 U.S.C. § 1405 et seq. Under that earlier Act, the legislative power of the Virgin Islands was vested in the Municipal Council of St. Croix and the Municipal Council of St. Thomas and St. John, and in a so-called "Legislative Assembly of

the Virgin Islands" comprising the two municipal councils in joint session, which legislative assembly was empowered to enact legislation applicable to the Virgin Islands as a whole. It was the common practice of these legislative bodies, by resolution, to authorize their respective committees to function in the interim between sessions, as well as during sessions. For instance, a resolution of the legislative assembly on August 7, 1952, established certain standing committees of the legislative assembly, with full subpoena powers as provided in § 11 of the Organic Act, 49 Stat. 1809. Such committees were instructed to make studies and investigations on their own motion or upon direction of the assembly and were empowered to recommend legislation from time to time to the assembly. Further, it was provided that the chairman of the assembly "shall determine what legislation, appointments, studies and other matters fall within the jurisdiction of the respective committees and shall make appropriate assignments to such committees whether or not the Assembly is in session."

When the Congress came to revise the Organic Act in the spring of 1954, it had under consideration a bill which, on the whole, was thought to enlarge the degree of local autonomy delegated to the people of the Virgin Islands. A few of the provisions of the bill were more restrictive, including the explicit provision of § 7(a) limiting the regular sessions of the Legislature of the Virgin Islands to a maximum of "sixty consecutive calendar days in any calendar year". 68 Stat. 500. If the Congress had intended at the same time to forbid the settled practice of the legislative bodies under the earlier Organic Act to authorize committees to function in the interim between sessions, is it not fair to expect that such restrictive purpose would also have been explicitly written into the Revised Organic Act?

Instead of that, what did the Congress do? It abolished the old municipal councils and provided a single unicameral legislature for the whole of the Virgin Islands. And in § 6(g) it provided:

"The rules of the Legislative Assembly of the Virgin Islands existing on the date of approval of this Act shall continue in force and effect for sessions of the legislature, except as inconsistent with this Act, until altered, amended, or repealed by the legislature." 68 Stat. 499–500.

Unless the Revised Organic Act contained some inconsistent provision, § 6(g) thus amounted to congressional approval of the then existing resolution of the Legislative Assembly of the Virgin Islands appointing standing committees with authority to function in the interim between sessions of the assembly. The only provision of the Revised Organic Act claimed by appellant to be thus inconsistent is the one already referred to in § 7(a), restricting the regular sessions of the legislature to sixty days. But § 7(a) is only a limit on the power to legislate; it does not deal at all with the power to conduct interim investigations through appointed committees. Moreover, if appellant's argument were accepted, the same result would be reached here even if the Congress had not limited the regular legislative sessions to sixty days; that is, if the legislature, having no time limit on its power to legislate except of course the expiration of the terms of office of the legislators, should decide to shut up its legislative shop and adjourn its session sine die, subject only to the possibility of recall by the governor in special session, appellant would also argue that, since there was no longer any current power to legislate after such adjournment sine die, there could be no exercise in the interim of the ancillary power to investigate. Therefore, we cannot see that the sixty-day limit on the power to legislate has any bearing on the present problem one way or the other.

In fact, the Congress was not content to leave it to implication that the legislature had "inherent" power to investigate as a necessary incident to its power to legislate. It conferred upon the legislature explicitly the power to investigate. In § 6(g) the Congress provided: "The legislature shall be the sole judge of the elections and qualifications of its members, shall have and exercise all the authority and attributes, inherent in legislative assemblies, and shall have the power to institute and conduct investigations, issue subpena to witnesses and other parties concerned, and administer oaths." 68 Stat. 499. Note that the power to investigate is conferred as a separate and distinct power, not as a power dependent for its functioning upon a presently existing power to legislate. The omission of any such limitation is, we think, quite significant.

The Revised Organic Act became law on July 22, 1954. Under it the first annual session of the Legislature of the Virgin Islands commenced on the second Monday of January, 1955. § 7(a), 68 Stat. 500. The legislature promptly concerned itself with drafting its Standing Rules, which were adopted by resolution of the legislature on February 1, 1955. In these Standing Rules the legislature provided for several so-called standing committees of the legislature, including a Committee on Finance. In § 4(a) of Rule XI, it was provided that the Committee on Finance "shall make such studies and examinations of executive departments and agencies as it deems necessary or as required by resolutions of the legislature or by law." Section 4(b) provided: "The Committee on Finance shall continue in existence during any recess of the legislature and after final adjournment and until the convening of the next legislature and shall have the same powers and duties as when the legislature is in session." Section 7 contained a more general provision, applicable to each stand-

ing committee in the legislature, instructing it to "serve as an investigating committee with power to act during the sessions of the legislature, including any recess, and after final adjournment, and until the commencement of the next legislature with authority to file its report not later than the fifth legislative day of said next legislature. The committees shall also act after final adjournment in accordance with resolutions of the legislature, and as may be prescribed by law. Each such committee shall have all the powers conferred upon investigating committees by the Rules of the legislature." Section 10 authorized each standing committee to subpoena witnesses and documents. Subsection (a) of this section provided that, if any witness neglects or refuses to obey a subpoena or neglects or refuses to testify or to produce documents under his control, "he has committed a contempt." Subsection (b) provided that if the contempt is committed before a committee during a session of the legislature, "the committee shall report the contempt to the legislature for such action as may be deemed necessary by the legislature." Subsection (c) provided: "If the contempt is committed before a committee when the legislature is not in session, the District Court of the Virgin Islands may compel the attendance of the witness, the giving of testimony and the production of books, papers, documents and accounts, as required by the subpoena issued by the committee, on the filing by the committee of a petition to the court asking that the witness be so compelled."

Thus it appears from the foregoing provisions of the Standing Rules that the newly organized Legislature of the Virgin Islands, at its earliest opportunity, construed the revised Organic Act as authorizing it to set up investigating committees with power to function in the interim beween sessions — a continuation, in other words, of the practice which had become familiar under the earlier Organic Act.

To implement these provisions of its Standing Rules, the First Legislature of the Virgin Islands, at its regular session in 1956, enacted a statute, Act No. 86, which was duly signed by the governor, to provide for the attendance of witnesses and for the punishment for disobedience to subpoenas issued by the Legislature of the Virgin Islands or any of its committees. Section 1(b) of Act No. 86 (2 V.I.C. § 1) read:

"Resolutions of the Legislature providing for inquiries and investigations shall contain a limit of cost of each such investigation, which limit shall not be exceeded except by vote of the Legislature authorizing additional amounts."

Section 3 of the same Act (2 V.I.C. § 7) provided that any person who shall wilfully disobey any subpoena issued by the legislature or any of its authorized committees, or who shall wilfully refuse to testify before such body or to produce requested records and documents, shall be charged with contempt and upon conviction thereof shall be subject to a specified fine or imprisonment. Section 4 of Act No. 86 (2 V.I.C. § 8), which was apparently inspired by § 10(b) and (c) of Rule XI of the Standing Rules of the legislature, above quoted, provided as follows:

"Section 4(a) If the contempt is committed before a committee during a session of the Legislature, the committee shall report the contempt to the legislature for such action as may be deemed necessary by the legislature.

"(b) If the contempt is committed before a committee when the legislature is not in session, the District Court of the Virgin Islands may compel the attendance of the witnesses, the giving of testimony, and the production of books, papers, documents, and accounts, as required by the subpoena issued by the committee, on the filing by the committee of a petition to the court asking that the witness be so compelled."

Section 5 of Act No. 86 (2 V.I.C. § 9) provided that proceedings for the punishment of such contempts should be brought in the name of the People and should be prose-

cuted by the United States Attorney or his representative.

Appellant concedes that a committee of the legislature can be authorized to function in the interim between sessions, provided that authorization is contained in a duly enacted statute presented to the governor for approval. He insists, however, that such authorization cannot be given by a simple resolution of the legislature. And he insists that Act No. 86, though it is no doubt a statute, signed by the governor, is not a statute authorizing committees of the legislature to function in the interim between sessions. But it may be considered, it seems to us, that Act No. 86 is a duly enacted statute delegating to the legislature authority, by simple resolution, to set up investigating committees with power to function in the interim, and providing the procedure whereby such an authorized committee is empowered to enforce its demands when the legislature is not in session.

■ However that may be, for the reasons already indicated we think that the legislature already had the power, under the Revised Organic Act, to create investigating committees by simple resolution, with power to act in the interim, without the need of pointing to any specific statute delegating to the legislature the power so to act. And in any event it can be said that Act No. 86 constitutes at least an implied interpretation of the Revised Organic Act, both by the legislature and by the signing governor, to the effect that under the Organic Act "Resolutions of the Legislature providing for inquiries and investigations" (the only type of legislative action referred to in Act No. 86) may empower a legislative investigating committee to function in the interim between sessions; otherwise it would have made no sense for Act No. 86 to provide specifically the procedure for enforcement when a contempt "is committed before a committee when the legislature is not in session".

620

Having considered the merits of the question presented we now turn to the specific facts which precipitated it.

■ By Resolution No. 30 adopted by the first legislature on June 6, 1956, which was the 59th day of its second regular session, it was recited that information had come to the legislature which, if correct, indicated that public monies had been paid out of the treasury illegally, particularly in connection with travel expenses of several officials of the government; wherefore it was resolved that the Finance Committee of the legislature "be, and it is hereby, authorized, to initiate and complete a thorough investigation" of expenditures of the Government of the Virgin Islands "made during the fiscal years 1955, 1956 and 1957". Since it was obvious that such investigation could not possibly be completed before the adjournment of the regular session of the legislature on the following day, Resolution No. 30 directed the Finance Committee "to make a full and complete report to the Legislature at its next session, regular or special." Furthermore, the Finance Committee was authorized to employ legal counsel and other assistance, up to a maximum of $2,000.

The legislature duly adjourned sine die on June 7, 1956. Thereafter, on July 10, 1956, the Standing Committee on Finance directed a subpoena to Mr. Percy De Jongh, Commissioner of Finance, appellant herein, directing him or a duly designated representative to present to the Committee on Finance on the afternoon of July 16, 1956, "copies of all Vouchers and Schedules of Payments covering expenditures made by the Department of Finance of the Government of the Virgin Islands for the period July 1, 1954, to September 30, 1954, . . ." The Commissioner declined to honor this subpoena, not on his own authority but pursuant to Executive Order No. 14 issued by the governor on July 5, 1956. This Executive Order was a

directive to all commissioners and heads of executive and administrative departments forbidding them, without the governor's written approval, to appear before any interim committee of the legislature or to supply to such committee any requested information, books or records. The recited ground for this directive was that "the Virgin Islands Legislature had no power or authority to create any committee or committees to act for the Legislature after it had adjourned sine die, and any such committee has no official standing or legislative functions".

Whereupon the Finance Committee, pursuant to § 4(b) of Act No. 86 (2 V.I.C. § 8(b)), above set forth, filed its petition in the District Court of the Virgin Islands praying for a court order commanding the Commissioner of Finance, or a duly designated representative, to present to the Finance Committee copies of all vouchers and schedules of payments as specified in the committee's subpoena of July 10, 1956. The District Court issued to the respondent Commissioner a citation and order to show cause. Thereafter the United States Attorney, on behalf of the Commissioner, filed a motion to dismiss on the ground that the petition failed to state a claim upon which relief could be granted. After further proceedings the District Court issued an order denying the motion to dismiss; and on September 17, 1956, the District Court issued its final decree ordering the Commissioner of Finance to appear before the Finance Committee of the legislature "on the fifteenth day from the date of service of a certified copy of this Decree upon him, and to respond to the subpoena duces tecum of the said Finance Committee, dated July 10, 1956 and heretofore served on the said Percy De Jongh." The decree further recited that it was "without prejudice to the right of the said Percy De Jongh to raise before the said Finance Committee and, if subsequent occasion should arise, before this Court, any claim

that in the circumstances of the case the demand for information is unreasonably and improperly comprehensive." It is from this decree that the present appeal has been taken. For the reasons already stated we are of opinion that the decree must be affirmed.

A judgment will be entered affirming the decree of the District Court.